COMMONWEALTH *vs.* LEO A. DEROSIA.

Worcester. April 6, 1988. — May 4, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Search and Seizure*, Home of third person. *Constitutional Law*, Search and seizure.

Where police officers made a warrantless entry into the dwelling of a suspect's mother wherein he was a lawful visitor, frisked the suspect, found a pistol in his waistband, and then arrested him, the police activity, in the absence of any showing of exigent circumstances or consent, was not justified under the Fourth Amendment to the Federal Constitution, and consequently, the judge properly allowed a motion to suppress as evidence the firearm seized by the police. [286]

COMPLAINT received and sworn to in the Gardner Division of the District Court Department on January 6, 1986.

On appeal to the jury session of the Fitchburg Division, a pretrial motion to suppress evidence was heard by *Thomas F. Sullivan, Jr.*, J.

An application for an interlocutory appeal was allowed by *Wilkins*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

*Peter K. Binder* for the defendant.

NOLAN, J. As a result of a search and a seizure of a firearm from his person on January 5, 1986, the defendant was found guilty at a bench trial of unlawfully carrying a firearm. He appealed to the jury session and, before trial, he filed a motion to suppress the firearm. The judge allowed the motion. The Commonwealth appealed and a single justice of this court allowed the Commonwealth's application for interlocutory appeal. We affirm.

We have the benefit of the motion judge's thoughtful findings of fact from which we learn that an officer of the police department of Keene, New Hampshire, received a telephone call from an anonymous informant on January 5, 1986. The caller told the police officer that the defendant was in the area and armed with a .32 caliber handgun. This police officer knew that a capias had been issued on a New Hampshire indictment for arrest of the defendant for his defaulting on a bail bond, and for weapons and narcotics offenses. Armed with another report as to the defendant's location, this police officer telephoned a home in Gardner, Massachusetts. The telephone was answered by the defendant (the officer recognized his voice). A check of the telephone records indicated that the residence called was that of the defendant's mother in Gardner.

The police officer in Keene then telephoned a police officer in Gardner and told him that the defendant was in Gardner, in his mother's home, was armed, probably had a police scanner, and that he was wanted on a capias in New Hampshire for a weapons offense. He told the Gardner police officer that the defendant might be operating a motor vehicle with Texas registration plates, and furnished a detailed description of the defendant. The Gardner police officer confirmed the existence of the weapons charge, as well as the default on the bail bond and his outstanding narcotics offenses by using a computer terminal linked to the National Crime Information System. The Keene police department sent the capias to the Gardner police and, on receipt of it, the Gardner police went to the residence of the defendant's mother. Two persons emerged from the residence and drove away. A police officer stopped them and asked whether the defendant was present in his mother's home. The driver acknowledged the defendant's presence in the house, but he said that he did not know whether the defendant was armed at the time.

This police officer then telephoned an assistant clerk of the local District Court and told him of the defendant's location and the capias. The assistant clerk advised the police officer that a warrant for the defendant's arrest was not necessary. Several police officers went to the residence of the defendant's

mother. One police officer knocked on the door. The defendant responded. The police entered the apartment, frisked the defendant, found a pistol in his waistband, and then arrested him.

We are deciding this case under the United States Constitution under which, absent exigent circumstances, police may not make a warrantless entry into a person's dwelling to arrest him or to seize evidence. *Payton* v. *New York*, 445 U.S. 573, 587-589 (1980). *Commonwealth* v. *Forde*, 367 Mass. 798, 800 (1975), and cases cited. It is true that the defendant was not in his own dwelling. He was a visitor lawfully in the home of his mother. Our law is clear that in these circumstances, absent exigency or consent, a search or arrest warrant must first be obtained before police may enter the home of a third person in search of a suspect. *Steagald* v. *United States*, 451 U.S. 204, 205-206 (1981).

In this case, there were no exigent circumstances to justify a warrantless entry into the dwelling of the defendant's mother. The provision for a warrantless arrest in G. L. c. 276, § 20B (1986 ed.),[1] does not advance the Commonwealth's position because the statute does not authorize an entry into a dwelling to effectuate a warrantless arrest.

The judge was correct in allowing the defendant's motion to suppress the firearm seized on his person in his mother's home.

*So ordered.*

---

[1] General Laws c. 276, § 20B, provides: "The arrest of a person may be lawfully made also by any officer authorized to serve warrants in criminal cases, without a warrant, upon reasonable information that the accused stands charged in another state with a crime punishable by death or by imprisonment for a term exceeding one year, but when so arrested the accused shall be taken with all practicable speed before a court or justice authorized to issue warrants in criminal cases and complaint shall be made against him under oath setting forth the ground for the arrest as in the preceding section; and thereafter his answer shall be heard as if he had been arrested on a warrant."