## COMMONWEALTH *vs.* NILES L. HINCKLEY.

Barnstable. January 12, 1996. - March 12, 1996.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & FRIED, JJ.

*Constitutional Law,* Self-incrimination. *Evidence,* Consciousness of guilt. *Practice, Criminal,* Failure to make objection.

In a criminal case, evidence that the defendant refused to turn over his sneakers to the police so that investigators could determine whether they matched shoe prints found at the scene of a crime was improperly admitted in violation of the defendant's privilege against self-incrimination protected by art. 12 of the Declaration of Rights of the Massachusetts Constitution; the error was not harmless where the case against the defendant was wholly circumstantial and where the prosecutor argued and the judge instructed that the jury could infer the defendant's guilt from the defendant's refusal. [264-267]

A criminal defendant who did not preserve an objection on constitutional grounds to testimony that he had refused to turn over his sneakers to police so that they could be compared to shoe prints at the scene of a crime was entitled to raise the issue on appeal, where his trial occurred before this court rendered its *Opinion of the Justices,* 412 Mass. 1201 (1992), and decided *Commonwealth* v. *Lydon,* 413 Mass. 309 (1992) (stating that admission of such refusal evidence would violate a defendant's privilege against self-incrimination protected by art. 12 of the Declaration of Rights of the Massachusetts Constitution), and where under *Commonwealth* v. *D'Agostino,* 421 Mass. 281 (1995), the defendant was entitled to the clairvoyance exception from waiver of the issue. [267-268]

INDICTMENTS found and returned in the Superior Court Department on May 7, 1991.

The cases were tried before *Elizabeth J. Dolan,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Steven M. Bloom* for the defendant.

*Julia K. Holler,* Assistant District Attorney (*Linda Wagner,* Assistant District Attorney, with her) for the Commonwealth.

FRIED, J. The defendant refused to turn over his sneakers

to the Commonwealth in the course of a criminal investigation. Evidence of this refusal was admitted at his trial. We now decide in accordance with our prior decisions that the admission of this refusal evidence violated the defendant's State constitutional privilege against self-incrimination and that his failure to object to the admission at trial does not preclude his raising the issue on appeal before his convictions become final. Accordingly, we reverse the judgments of the Superior Court and remand for a new trial.

I

On November 20, 1991, a jury convicted the defendant and his half-brother, Craig Martin (brothers) of breaking and entering in the daytime and larceny in a building.[1] The Commonwealth presented evidence that sometime after 4:20 P.M. on March 16, 1991, the office at the town of Yarmouth landfill was broken into and a safe was stolen. Damage to a garage window and the office door indicated that entrance to the office had been gained through the garage. The safe, weighing 500 to 600 pounds, was kept under a table in the office. Physical evidence established that the safe was forced through an office door that led to the outside, transported across the landfill's property on a dolly (also taken from the landfill), and deposited near an alley behind a shopping plaza adjacent to the landfill. Outside the landfill office window and office door, the police found at least two different sets of shoe prints.

At approximately 8:20 P.M., the brothers arrived at the apartment of a friend of Martin in a car registered to the defendant's girl friend. Martin asked his friend if he would help them move something. The friend agreed and followed them in his own car to the alley behind the plaza. The friend helped the brothers lift the safe into the back of their car and cover it with a quilt. After leaving the alley, the two cars

---

[1]The defendant and Martin were tried together. Martin also was found guilty of the same offenses, but he is not a party to this appeal.

The defendant was also indicted on receiving stolen property. The defendant did not contest this indictment. The trial judge instructed the jury not to consider this indictment if they found the defendant guilty of the more serious larceny indictment, since convictions on both indictments would have been inconsistent. See, e.g., *Commonwealth* v. *Nascimento,* 421 Mass. 677, 682-685 (1996). Accordingly, the judge dismissed the receiving stolen property indictment following the defendant's conviction of breaking and entering in the daytime and larceny in a building.

pulled to the side of the road to aid a female friend of theirs whose car had broken down. After a brief conversation, the brothers agreed to give the woman and her companion a ride to her apartment. Once at her apartment, the brothers and the friend moved the safe into the apartment and the brothers began to pry it open with a crowbar and a sledgehammer. Although they succeeded in removing the dial from the safe, the safe would not succumb to their efforts, and the brothers eventually gave up. In the meantime, the friend had left the apartment and drove to the police station where he disclosed his involvement in this affair. The police, in the course of their pursuit of another vehicle, came upon the car that had been used by the brothers. The car appeared to have been recently abandoned, and in it the police found the crowbar and the sledgehammer used by the brothers to pry at the safe, as well as the safe's dial. The police eventually discovered the safe sitting in the middle of a nearby dirt road within one mile of the car.

Prior to trial, the defendant's trial counsel sought to exclude the testimony of an officer of the Barnstable County jail who was prepared to testify that the defendant refused to turn over his sneakers to the police so that investigators could determine if the sneakers matched the shoe prints found at the landfill.[2] Counsel protested that this witness did not appear on the Commonwealth's witness list. Counsel also challenged the admission of this evidence on the ground that it was more prejudicial than probative. He explained that he was stressing prejudice because "based on the law I have read, [refusal evidence] is not testimonial in nature and therefore on that basis wouldn't be excluded." The prosecutor agreed. The judge declined to decide the issue before trial. When the Commonwealth sought to have the jail officer testify, the judge overruled the defendant's renewed objection, stating that refusal evidence "was non-testimonial and basically it's admissible," and permitted the testimony concerning the defendant's refusal for the purpose of establishing consciousness of guilt. In its closing argument, the Commonwealth argued that the jury could infer the defendant's

[2]A deputy sheriff testified that the shoe prints found outside the facility did not match Martin's sneakers.

guilt from his refusal to turn over his sneakers.[3] At the Commonwealth's requests, the judge instructed the jury that they were permitted to infer guilt from the defendant's refusal but cautioned them that this evidence could not serve as the sole basis for their verdicts.

On November 20, 1991, the jury convicted the defendant and Martin of breaking and entering in the daytime and larceny in a building. In an unpublished memorandum issued pursuant to its rule 1:28 the defendant's convictions were affirmed by the Appeals Court. *Commonwealth* v. *Hinckley*, 38 Mass. App. Ct. 1103 (1995). This court granted the defendant's application for further appellate review and we now reverse the convictions.

## II

The defendant asserts that the admission of the evidence that he refused to produce his sneakers violated his privilege against self-incrimination as protected by art. 12 of the Declaration of Rights of the Massachusetts Constitution.[4] In 1992, after the defendant's trial, this court decided *Commonwealth* v. *Lydon*, 413 Mass. 309 (1992), and rendered an *Opinion of the Justices*, 412 Mass. 1201 (1992). We held in *Lydon* that the admission of refusal evidence violated a defendant's State constitutional privilege against self-incrimination. *Lydon, supra* at 313-315 (evidence of refusal to submit to swabbing of hands for evidence of gunpowder inadmissible). See also *Opinion of the Justices, supra* (evidence of refusal to take breathalyzer would be unconstitutionally inadmissible). The admission of the defendant's refusal to turn over his sneakers similarly violated his State constitutional privilege against self-incrimination. In all these instances, the defendant's refusal tends to communicate his belief that he is guilty. Although the refusing party has no constitutional right to refuse to produce real or physical evi-

---

[3]The prosecutor stated: "[The defendant], after he's arrested, refuses to turn over his sneakers. Now that in and of itself doesn't prove anything, ladies and gentlemen, enough to find the defendant[ ] guilty beyond a reasonable doubt, but that's another fact for you to consider in this case."

[4]Article 12 provides in part that "[n]o subject shall be . . . compelled to accuse, or furnish evidence against himself."

dence that the Commonwealth is seeking, see *Lydon, supra* at 313-314; *Opinion of the Justices, supra* at 1207-1208; *Commonwealth* v. *Brennan*, 386 Mass. 772, 776, 780 (1982), if he refuses, that refusal may not be introduced at trial to establish the defendant's consciousness of guilt. If this issue had been properly preserved below, the prohibition against refusal evidence recognized in *Opinion of the Justices, supra*, would undoubtedly apply to the defendant retroactively. See *Commonwealth* v. *D'Agostino*, 421 Mass. 281, 284 & n.3 (1995); *Commonwealth* v. *Figueroa*, 413 Mass. 193, 202 (1992), *S.C., ante* 72 (1996).

The defendant, however, did not preserve this issue. In his motion in limine, trial counsel did not raise the issue of the constitutionality of admitting the refusal evidence. Counsel, citing *Commonwealth* v. *Diaz*, 383 Mass. 73 (1981), argued only that the probative value of the refusal evidence was outweighed by its prejudicial impact. This argument does not raise the constitutional implication of refusal evidence. See *Commonwealth* v. *Pisa*, 384 Mass. 362, 366 (1981). When the issue was raised at trial, the defendant's counsel dismissed any constitutional concerns related to the sneaker issue as not supportable, and the prosecutor and the judge concurred. In addition, trial counsel did not object when the prosecutor incorporated the refusal testimony in his closing argument, or when the judge gave her instructions on this point to the jury.

When the issue appealed is not properly preserved, we would normally only reverse a conviction if the error created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Jackson*, 419 Mass. 716, 719 (1995). "However, we have ruled in a number of cases that a defendant does not waive a constitutional issue by failing to raise it before the theory on which his argument is premised had been sufficiently developed to put him on notice that the issue is a live issue. Counsel need not be 'clairvoyant.' " *Commonwealth* v. *Bowler*, 407 Mass. 304, 307 (1990). See *Commonwealth* v. *Rembiszewski*, 391 Mass. 123, 126 (1984); *DeJoinville* v. *Commonwealth*, 381 Mass. 246, 248 (1980); *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 16 (1986). The court's reasoning in *D'Agostino, supra*, with respect to the relationship of the clairvoyance exception and the principle recognized in *Opinion of the Justices, supra*, is determinative of this issue. In *D'Agostino, supra*, the jury convicted the defendant of

operating a motor vehicle while under the influence of intoxicating liquor. The defendant asserted that the jury instructions, which had the effect of telling the jury, "by strong implication at least, that the defendant's blood alcohol level had not been tested, and that the reason no test was conducted was that the defendant refused to submit to such a procedure," *Commonwealth* v. *Zevitas*, 418 Mass. 677, 683 (1994),[5] violated his privilege against self-incrimination. At trial, however, the defendant did not object to these instructions on the ground that they violated his privilege against self-incrimination by permitting an improper inference to be made from refusal evidence. After the trial in the *D'Agostino* case, the Justices opined in *Opinion of the Justices, supra,* that these particular instructions would violate a defendant's privilege against self-incrimination.[6] Thus, the issue in *D'Agostino* was whether the application of the constitutional privilege to refusal evidence had been "sufficiently developed to put [counsel] on notice that the issue is a live issue." *Bowler, supra* at 307. In *D'Agostino, supra,* we examined the decisional law prior to *Opinion of the Justices, supra,* and concluded that "[n]ot until *Opinion of the Justices, supra,* was there anything in the nature of discussion by an appellate court in the Commonwealth which would have put the defendant fairly on notice that an instruction calling the jury's attention to a defendant's probable refusal to submit to a breathalyzer test might be held to violate art. 12's right against self-incrimination." *D'Agostino, supra* at 286. Accordingly, by application of the clairvoyance exception, we permitted the constitutional issues to be raised on appeal.

There is no basis on which to distinguish the arguments here from those decided in the *D'Agostino* case. Indeed, the defendant's trial here occurred prior to the trial of the defendant in *D'Agostino*. See *Commonwealth* v. *D'Agostino, supra* at 284. Therefore, relying on the discussion of this issue in *D'Agostino, supra,* we conclude that the defendant is entitled

---

[5]The instructions were mandated by G. L. c. 90, § 24 (1) (*e*) (1994 ed.).

[6]In *Commonwealth* v. *Zevitas*, 418 Mass. 677, 682-683 (1994), we made it "abundantly clear that its holding is grounded in the earlier analysis provided in the *Opinion of the Justices, supra*." *Commonwealth* v. *Adams*, 421 Mass. 289, 293 (1995) (holding that clairvoyance exception did not apply because defendant's trial occurred after this court's opinion in *Opinion of the Justices, supra*).

to benefit from the principle announced in *Opinion of the Justices, supra,* and applied in *Lydon, supra.*[7]

Since the clairvoyance exception applies, "[t]he remaining question is whether the error was harmless beyond a reasonable doubt. See *Commonwealth* v. *McGrail,* 419 Mass. 774, 780 (1995); *Commonwealth* v. *Perrot,* 407 Mass. 539, 548-549 (1990)." *D'Agostino, supra* at 287. We determine that it was not. The Commonwealth's case was purely circumstantial; it introduced no evidence that placed the defendant at the landfill at the time of the crime. The friend who helped with the safe after it had been removed from the landfill office did not testify that the brothers told him that they had committed the breaking and entering or the larceny. The Commonwealth introduced no physical evidence of the defendant's involvement in the breaking and entering or larceny: no fingerprints, and no evidence linking the tools in the car to the ones used to break into the landfill office. All that the evidence shows is that the defendant was associated with the safe after it had been removed from the landfill's office. Refusal evidence, particularly accompanied by the prosecution's argumentation and the judge's instruction on the implications of this evidence, is persuasive, and may have convinced the jury of the defendant's guilt beyond a reasonable doubt.[8]

For these reasons, the defendant's convictions of breaking

[7]The defendant properly raised this issue in a footnote in his brief to the Appeals Court. In that footnote, the defendant outlined the standard, provided citations, and applied the standard to his case, thereby satisfying Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

[8]The defendant also contends that there was prejudicial error where the judge allowed the prosecution to introduce evidence that indicated that the codefendant, Martin, and other family members had intimidated a witness. The defendant argues that the intimidation evidence was inadmissible and, if admissible, was so prejudicial that the judge should have ordered a severence. We find no error in the judge's actions. The evidence was admissible as revealing the state of mind of the witness, and, at the close of the testimony concerning the intimidation, the judge gave a careful limiting instruction. The balancing of the prejudicial impact of this evidence and its probative value is best done by the trial judge and we "see no error, let alone palpable error, in the judge's balancing of the relative probative value and unfair prejudice of the evidence." *Commonwealth* v. *Fordham,* 417 Mass. 10, 23 (1994).

and entering in the daytime and larceny of a building are reversed and the case is remanded for a new trial.

*So ordered.*