COMMONWEALTH *vs.* RICHARD BLAIS.

Suffolk. September 2, 1998. - November 3, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Search and Seizure,* Probable cause, Consent. *Constitutional Law,* Search and seizure. *Probable Cause. Motor Vehicle,* Operating under the influence. *Evidence,* Intoxication, Field sobriety test.

The administration of roadside sobriety tests did not violate a driver's rights under the Fourth Amendment to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights, where the officer who stopped the driver had probable cause, in the circumstances, to arrest the driver for operating a motor vehicle while under the influence of alcohol [296-297]; moreover, roadside sobriety tests are reasonable incidents of a *Terry* stop, where the officer has a reasonable suspicion that the driver is so operating [297-298].

To obtain valid consent to perform roadside sobriety tests, a police officer is not required to advise a driver whom he reasonably suspects of operating a motor vehicle while under the influence of alcohol that the driver is free to refuse to perform the tests. [298-299]

COMPLAINT received and sworn to in the Chelsea Division of the District Court Department on October 7, 1996.

A motion to suppress evidence was heard by *Peter W. Agnes, Jr.,* J., and questions of law were reported to the Appeals Court by him. The Supreme Judicial Court transferred the case on its own initiative.

*Aline G. Carriere & James F. Rennick* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

FRIED, J. Having denied the defendant's motion to suppress the results of standard roadside field sobriety tests, a District Court judge, in substance, reported the following questions to the Appeals Court pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979): (1) whether conducting such tests constitutes a search that may be undertaken only where there is probable cause to arrest; and (2) whether a person may be taken to have

consented to such tests only if first specifically advised that he has a right to refuse to perform them.[1] We transferred the case to this court on our own motion. We affirm the denial of the motion to suppress and answer both questions in the negative.

## I

A State trooper saw the defendant's automobile traveling above the speed limit with only one headlight illuminated. The automobile stopped at a restaurant. The officer pulled in behind the automobile and approached the defendant, who was the operator and sole occupant. The officer told the operator that he had observed him speeding and requested his license and registration. The officer noticed a strong odor of alcohol and judged that the defendant's eyes were "red and glassy" and that his speech was slurred. The officer asked whether the defendant had been drinking, and he answered that he had had "a couple of beers." The officer asked the defendant to step out of the car and perform four standard field sobriety tests: the walk and turn test, the one leg stand test, the alphabet recitation test, and the horizontal gaze nystagmus test. See *Commonwealth* v. *Sands*, 424 Mass. 184, 186-187 (1997) (describing horizontal gaze nystagmus test). On the basis of the defendant's performance the officer concluded that the defendant had been operating the automobile while under the influence of alcohol and arrested him. The District Court judge found that the officer did not suspect that the defendant was drunk at the time he had observed him speeding and had not made up his mind to arrest the defendant until after the performance of the tests. He also found that the officer had "addressed the defendant in a conversational tone and made no overt gestures or threats concerning [the defendant's] decision to take the tests." The judge found that

---

[1] The specific questions reported by the judge were:

"(1) Do standard, roadside field sobriety tests such as those involving walking and turning, lifting a leg for a specified number of seconds, reciting the alphabet, or following an object such as a pen or light with one's eyes as it passes across one's field of vision require the police to have probable cause to arrest or to search, or may they be undertaken on the basis of reasonable suspicion as part of an otherwise valid threshold inquiry?

"(2) In order for a defendant to validly consent to perform standard, roadside field sobriety tests, is it necessary [for] the police officer to specifically advise the defendant that he or she has a right to refuse to perform such tests?"

the time required for the administration of the tests was from three to five minutes.

Invoking both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, the defendant moved to suppress the results of the field sobriety tests. He claimed that the tests constituted a search and seizure that could validly be performed only if there was probable cause to arrest him, and that the defendant cannot be taken to have consented to take these tests unless he had been specifically advised that he could refuse to take them. In a carefully reasoned decision which canvassed the law in this and other jurisdictions, the judge disagreed with both contentions and denied the defendant's motion. Noting the strong interest in a definitive resolution of these questions and the existence of several trial court decisions reaching a different conclusion, the judge reported the questions of the validity of the search and of the consent to the Appeals Court in accordance with rule 34. We transferred the case here on our own motion.

## II

Although the reported questions arise frequently and require answers, we do not accept the premise that led the judge to ask them. Taking the facts as he found them, we conclude that the officer had probable cause to arrest the defendant for the offense of operating a vehicle while under the influence of alcohol. The judge found that, having properly stopped the defendant to request his license and registration, the officer observed that the defendant's speech was slurred, his eyes red and glassy, and he detected a strong odor of alcohol. Because the defendant was the only person in the automobile, that was enough to give the officer probable cause to arrest. See *Commonwealth* v. *McGrail*, 419 Mass. 774, 776 (1995). The judge found that the officer did not think at that time that he did have probable cause but only a reasonable suspicion, and that he exercised his authority to administer the sobriety tests as an adjunct to the power to stop a person briefly on that basis. The officer's actual belief as to the legal basis for his authority, however, is irrelevant, so long as the circumstances justified the action he took. See *Whren* v. *United States*, 517 U.S. 806, 813 (1996), quoting *Scott* v. *United States*, 436 U.S. 128, 138 (1978) ("the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does

not invalidate the action taken as long as the circumstances, viewed objectively, justify that action"); *Commonwealth* v. *Smigliano*, 427 Mass. 490, 493 (1998).

## A

We are asked whether a stop under the authority of *Terry* v. *Ohio*, 392 U.S. 1 (1968), is sufficient to justify the administration of the roadside sobriety tests. We agree that requiring a person to perform the tests constitutes a search or seizure and therefore is subject to the strictures of the Fourth Amendment and art. 14.

The defendant contends that only probable cause, not reasonable suspicion, justifies such a search and supports this contention by pointing out that the searches generally authorized in conjunction with a *Terry*-type stop have been justified by the need to assure the safety of the inquiring officer. The sobriety tests, defendant maintains, are not like the standard "pat down search" but rather are a search for evidence, such as is only authorized incident to an arrest.

The dichotomy the defendant constructs is too rigid. As the Supreme Court has many times held "the 'touchstone of the Fourth Amendment is reasonableness.' . . . Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances. In applying this test we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." *Ohio* v. *Robinette*, 519 U.S. 33, 39 (1996), quoting *Florida* v. *Jimeno*, 500 U.S. 248, 250 (1991). The reasonableness of a particular search is a function of the degree and kind of the intrusion and the urgency of the occasion. See *Commonwealth* v. *Williams*, 422 Mass. 111 (1996); *Commonwealth* v. *Willis*, 415 Mass. 814, 819-820 (1993); *Commonwealth* v. *Mantinez*, 44 Mass. App. Ct. 513, 516 (1998). We have certainly allowed an officer who detains a person on reasonable suspicion to inquire into and to hold that person briefly while his identity is checked, *Commonwealth* v. *Salerno*, 356 Mass. 642, 646-647 (1970), and even to transport a defendant to witnesses for identification purposes, *Commonwealth* v. *Barros*, 425 Mass. 572, 585 (1997) (defendants transported short distance and detained for fifteen minutes prior to being identified), although such actions are not taken to assure the officer's immediate safety. Moreover, there is indeed a significant safety concern at stake here, although it is not the

same one as where the officer frisks the detained person for weapons. A drunk driver let loose on the highways is a deadly menace, not only to the officer, but also to anyone sharing the highways with him. The *Terry* decision explicitly recognized that it is not only the officer's concern for his own safety, but for that of others as well, that may form the basis for a reasonable search. *Terry* v. *Ohio, supra* at 24 (extolling "the need for law enforcement officers to protect themselves and *other prospective victims of violence* . . . where they may lack probable cause for an arrest" but where individual being investigated is "presently dangerous to the officer *or to others*" [emphasis added]). Accordingly, it is appropriate for an officer with reasonable suspicion that a person is operating a vehicle while under the influence of drugs or alcohol to take the brief, scarcely burdensome steps involved in administering these tests in order to assure himself that he is not turning loose a drunk driver on the traveling public. See *Commonwealth* v. *Shields*, 402 Mass. 162, 167 n.3 (1998), quoting *South Dakota* v. *Neville*, 459 U.S. 553, 558 (1983) (noting strong State interest in eliminating "[t]he carnage caused by drunk drivers"). As the judge pointed out, this conclusion accords with the vast majority of jurisdictions to have considered the question.[2]

## B

A search conducted with the consent of its subject is free of the strictures of the Fourth Amendment and art. 14. See, e.g., *Commonwealth* v. *Sanna*, 424 Mass. 92, 96 (1997), quoting *Commonwealth* v. *Voisine*, 414 Mass. 772, 783 (1993), and *Commonwealth* v. *Derosia*, 402 Mass. 284, 286, cert. denied, 488 U.S. 980 (1998). The judge asks whether, in obtaining a person's consent to perform the tests, an officer must advise him that he is free to refuse. On the general question whether a consent requires such a Miranda-like warning in order to count as valid for purposes of the Fourth Amendment, the Supreme Court has spoken with unmistakable clarity, most recently with

---

[2]See *State* v. *Superior Court*, 149 Ariz. 269, 274 (1986); *State* v. *Lamme*, 19 Conn. App. 594, 601 (1989), aff'd, 216 Conn. 172, 176 (1990); *State* v. *Taylor*, 648 So. 2d 701, 703 (Fla. 1995); *State* v. *Golden*, 171 Ga. App. 27, 31 (1984); *State* v. *Wyatt*, 67 Haw. 293, 305 (1984); *State* v. *Pick*, 124 Idaho 601, 605 (1993); *State* v. *Eastman*, 691 A.2d 179, 181-182 (Me. 1997). But see *People* v. *Carlson*, 677 P.2d 310, 318 (Colo. 1984); *State* v. *Nagel*, 320 Or. 24, 36 (1994).

no dissent on the point, holding that such advice is not necessary. *Ohio* v. *Robinette, supra.* See *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 227 (1973). Nor is such a warning required under our Declaration of Rights. See, e.g., *Vanhouton* v. *Commonwealth,* 424 Mass. 327, 331 (1997) ("the investigating police officer is not required to furnish Miranda warnings to the motorist before administering field sobriety tests"); *Commonwealth* v. *Robinson,* 399 Mass. 209, 217 (1987), quoting *Commonwealth* v. *Harmond,* 376 Mass. 557, 561 (1978) ("Voluntariness of consent 'is a question of fact to be determined in the circumstances of each case,' " and voluntariness is not automatically negated by ."[t]he neglect or failure of the police to explain the right of the defendant to refuse to consent").

There may be circumstances accompanying an officer's request for consent that lead to the conclusion that the consent was not voluntary. There is nothing, however, in stops or arrests in connection with reasonable suspicion or probable cause to believe that a person is operating while under the influence of intoxicants nor in the request that the person perform these brief and simple tests that takes these cases, as a category, out of the general rule that advice as to a right to refuse is not necessary. Accordingly, we hold that disclosure of such right to refuse as the subject may have is not necessary for a valid consent.

Finally, we must be careful to negate a possible implication of the second question as it is posed. The second question asks whether the officer must advise the subject that he is free to refuse to perform the tests. It is a premise of the defendant's contention that a subject has a right to refuse to perform the tests. For this contention he relies on our decision in *Commonwealth* v. *McGrail,* 419 Mass. 774 (1995). But *McGrail,* like our decisions in *Vanhouton* v. *Commonwealth, supra, Commonwealth* v. *Brennan,* 386 Mass. 772 (1982), and *Opinion of the Justices,* 412 Mass. 1201 (1992), simply stands for the quite distinct proposition that a person's refusal to perform these tests, like his refusals to turn over real evidence, may not, consistent with the privilege against self-incrimination in art. 12 of the Massachusetts Declaration of Rights, be entered in evidence against that person.[3]

If a search is reasonable (and thus within the strictures of the

---

[3]In *Commonwealth* v. *McGrail,* 419 Mass. 774, 779-780 (1995), we did refer to as correct the trial judge's instruction that a driver is under no legal obligation to submit to field sobriety tests and approvingly cited an Oregon

Fourth Amendment and art. 14), the mere fact that refusal to consent cannot be introduced as evidence against a defendant does not entail the additional right to refuse to perform the tests or turn over the real evidence. Thus Massachusetts, like many other States, requires that, on being arrested for operating a motor vehicle while under the influence of intoxicating liquor, a person must submit to a breathalyzer test or have his license suspended for a minimum of 120 days. G. L. c. 90, § 24 (1) (*f*) (1).[4] In applying this statute, the Appeals Court explicitly stated, "[w]here there is probable cause to believe that a defendant has been operating a vehicle while under the influence of intoxicating liquor, *the defendant has no constitutional right to refuse a blood test or a breathalyzer test*" (emphasis added). *Commonwealth* v. *Davidson*, 27 Mass. App. Ct. 846, 848 (1989). Moreover, there are many other instances in which the Commonwealth is entitled to compel production of physical evidence if the suspect will not provide it willingly, even where such compulsion involves significant intrusion on the individual's person or privacy. See, e.g., *Matter of a Grand Jury Investigation*, 427 Mass. 221 (1998) (order directing suspects to provide blood samples); *Commonwealth* v. *Tarver*, 369 Mass. 302, 305 (1975) (hair samples taken in search incident to arrest); *Commonwealth* v. *Doe*, 408 Mass. 764, 768-769 (1990) (order requiring participation in lineup and use of necessary and reasonable force if defendant refused to consent); *Commonwealth* v. *Downey*, 407 Mass. 472, 475 (1990) (judge supervising grand jury ordered defendant to provide blood sample even though he had not been arrested, indicted and no finding of probable cause had been made).[5] That the Commonwealth may compel compliance with its orders and punish noncompliance necessarily

---

appellate decision to that effect. We have subsequently stated that, although refusal evidence may not be introduced at trial "the refusing party has no constitutional right to refuse to produce real or physical evidence." *Commonwealth* v. *Hinckley*, 422 Mass. 261, 264-265 (1996). It is well settled that roadside sobriety tests are considered analogous to physical (as opposed to testimonial) evidence. *Vanhouton* v. *Commonwealth*, 424 Mass. 327 (1997). *Commonwealth* v. *Brennan*, 386 Mass. 772 (1982). To the extent that the statement in *McGrail* is inconsistent with our later statement in *Hinckley* and with our decision today it is disapproved.

[4]The United States Supreme Court upheld the validity of an earlier version of this statute. *Mackey* v. *Montrym*, 443 U.S. 1 (1979).

[5]Similarly, the United States Supreme Court has held that police were justified in taking a sample of scrapings from under the fingernails of a person who had voluntarily come in for questioning, even where the person actively

implies that the detained individual is under an obligation to obey the order. As we said in *Commonwealth* v. *Hinckley*, 422 Mass. 261, 264-265 (1996), with respect to refusal to turn over a pair of sneakers for comparison with prints found at the scene of a break-in, although such refusal may not be introduced at trial to reestablish the defendant's consciousness of guilt, "the refusing party has no constitutional right to refuse to produce real or physical evidence that the Commonwealth is seeking." Cf. *Commonwealth* v. *Lydon*, 413 Mass. 309, 313-314 (1992); *Commonwealth* v. *Brennan*, *supra* at 776, and cases cited.

Of course the reverse implication need not hold: because a person is under an obligation to perform the tests or comply with some other lawful order, does not necessarily imply that he may be forced to comply. Whether and what steps may be taken to compel compliance will depend on the circumstances. The Supreme Court has held a person may be forced to provide fingernail scrapings or submit to a blood test. See *Cupp* v. *Murphy*, 412 U.S. 291 (1973); *Schmerber* v. *California*, 384 U.S. 757 (1966). Accord *Matter of a Grand Jury Investigation*, *supra*. On the other hand the Supreme Court has held that the degree of intrusion raises independent constitutional concerns, as where the evidence sought is a bullet which can only be removed surgically with the suspect under anesthesia, *Winston* v. *Lee*, 470 U.S. 753 (1985), or by pumping out the contents of the stomach, *Rochin* v. *California*, 342 U.S. 165 (1952). The very nature of the tests involved here makes the use of force to compel their performance obviously inappropriate.[6]

Consent only becomes an issue if a person requested or

---

refused, *Cupp* v. *Murphy*, 412 U.S. 291 (1973); in requiring a person to submit to a blood test incident to a lawful arrest on charges of driving while intoxicated, *Schmerber* v. *California*, 384 U.S. 757 (1966); in requiring a suspect to participate in a lineup, *United States* v. *Wade*, 388 U.S. 218 (1967); and in seizing handwriting exemplars, *Gilbert* v. *California*, 388 U.S. 263 (1967).

[6]The extreme case of ordering a person to perform such tests at gunpoint is also obviously excessive and impermissible, as would be threats of physical force. But neither these distinct constitutional and practical limitations on the means that may be taken to compel an order nor the prohibition under art. 12 against the introduction of refusal evidence as evidence of guilt demonstrates that there is no obligation to comply. As we have noted, refusal by a person under reasonable suspicion of operating while under the influence of intoxicating liquors to submit to a breathalyzer or blood test is a basis for suspension of that person's driver's license. See *Commonwealth* v. *Yameen*, 401 Mass. 331 (1987). Although the Legislature has made no similar provision for

Commonwealth *v.* Blais.

ordered to perform the tests is neither lawfully detained nor arrested. Indeed the defendant here must be taken to concede by his argument that consent is not necessary in the case of an arrest. By our answer to the first question we establish that the tests, although a search or a seizure, are reasonable incidents of a stop as well as of an arrest. It follows that there can be no right to refuse to perform those tests in the case of a lawful stop. If a person, lawfully arrested or detained, is ordered to perform the tests, the order does not violate any right of that person. Consent is not an issue in such cases.

The motion to suppress was properly denied. We answer the reported questions, "No."

suspension on refusal to perform roadside sobriety tests, we have no doubt that it might, and that is sufficient to support the conclusion that there is no right to refuse on reasonable suspicion.