COMMONWEALTH *vs.* CRAIG McCAFFERY.

No. 97-P-1958.

Middlesex. January 20, 1999. - July 25, 2000.

Present: GREENBERG, GILLERMAN, & RAPOZA, JJ.

*Breaking and Entering. Larceny. Receiving Stolen Goods. Constitutional Law,* Search and seizure, Reasonable suspicion, Probable cause. *Search and Seizure,* Probable cause. *Probable Cause. Protective Custody. Practice, Criminal,* Conviction.

Police officers acted reasonably and within their authority under G. L. c. 111B, § 8, in administering field sobriety tests to a person to determine whether he was incapacitated [715-717], and where the police, investigating the recent burglary of a wallet, found the defendant wandering in the immediate vicinity, they had probable cause to seize a wallet revealed as the defendant performed the tests [717-718].

Evidence at a burglary trial was sufficient to warrant the defendant's conviction of the crime. [718]

Where a criminal defendant had been convicted of larceny and receiving stolen property involving the same res, the convictions were duplicative; one count was correctly dismissed where the sentences were identical and ran concurrently. [718-719]

COMPLAINT received and sworn to in the Cambridge Division of the District Court Department on June 27, 1995.

A pretrial motion to suppress evidence was heard by *Jonathan Brant,* J., and the case was heard by *Roanne Sragow,* J.

*Edward E. Eliot* for the defendant.

*William S. Landay,* Assistant District Attorney, for the Commonwealth.

RAPOZA, J. The defendant was found guilty in a District Court jury-waived trial of breaking and entering in the nighttime with the intent to commit a felony, larceny of property valued at $250 or less, and receiving stolen property valued at $250 or

less.[1] On appeal, he claims error in the denial of his motion to suppress a wallet that belonged to the victim but was found on the defendant's person. Additionally, he challenges the sufficiency of the evidence, and further claims that his convictions for both larceny and receiving stolen property are legally inconsistent.

The Commonwealth's witnesses at the hearing on the motion to suppress testified as follows. On June 26, 1995, at approximately 3:15 A.M., Arlington police Officer Joseph Dunn responded to a broadcast regarding a burglary in which a man's wallet and some keys had been stolen. The officer stopped for several minutes to investigate an area where people were known to congregate. Finding no one there, Officer Dunn proceeded toward the residence where the burglary had occurred. As he approached the home, he noticed a man, bare chested and carrying a shirt, walking in the middle of the road. Officer Dunn recognized the individual (hereinafter, the defendant), having placed him in protective custody several times in the past. The officer also was aware that the man was homeless, and a suspect in certain other nighttime break-ins.

Officer Dunn pulled his vehicle alongside the defendant, and lowered the driver's side window. The defendant approached the officer's vehicle. Officer Dunn asked him where he was going, and if he had seen anyone else in the area. The defendant stated that he was going from his girlfriend's house to his aunt's house, and that he had not seen anyone. During this brief conversation, Officer Dunn noticed that the defendant appeared intoxicated, and smelled of liquor. Nonetheless, Officer Dunn left the defendant and drove to the home that had been burglarized.

In the driveway, Officer Dunn met and spoke with Lieutenant James Moran, also of the Arlington police. The two officers decided to speak with the defendant once again. The officers approached the defendant on foot in the parking lot of a nearby junior high school.[2]

Lieutenant Moran asked the defendant if he had been drink-

---

[1]After waiving his right to a jury trial, the defendant agreed that the case could be decided on the facts recited into the record by the prosecutor, although he did not concede either their accuracy or their sufficiency for purposes of conviction.

[2]From the record, it is unclear how far the defendant was from the home that had been burglarized when he first encountered Officer Dunn. Similarly, it

ing, and the defendant stated that he had. The officers then asked him to perform some field sobriety tests, which he agreed to do. The defendant performed adequately on the tests, but the officers, nonetheless, concluded that he was intoxicated.

While performing the "one-legged stand" test, the defendant raised his arms by his side for balance. When the defendant did so, Lieutenant Moran noticed a man's wallet tucked into the defendant's waistband.[3] He asked the defendant about the wallet,[4] at which time the defendant attempted to flee. The police officers apprehended the defendant, took the wallet, and opened it. The wallet belonged to the victim of the break-in.

1. *The motion to suppress.* The defendant's primary argument pertaining to his motion to suppress is that the police were not permitted to ask him to perform the field sobriety tests that resulted in the discovery of the victim's wallet. The defendant argues, correctly, that if the field sobriety tests were impermissible, evidence seized as a result thereof should be suppressed. See *Florida* v. *Bostick*, 501 U.S. 429, 433-434 (1991); *Commonwealth* v. *Torres*, 424 Mass. 153, 163 (1997).

As applied to motor vehicle stops, "requiring a person to perform the [field sobriety] tests constitutes a search or seizure and therefore is subject to the strictures of the Fourth Amendment and art. 14." *Commonwealth* v. *Blais*, 428 Mass. 294, 297 (1998). Because the tests constitute a search or seizure, it must then be determined what degree of suspicion the police must have in order to request that a citizen perform the tests. Observing that reasonableness, objectively determined from the totality of the circumstances, is the "touchstone of the Fourth Amend-

---

is unclear how far from the home Officer Dunn and Lieutenant Moran had traveled before they came upon the defendant and administered the field sobriety tests. It appears that the officers drove to the junior high school parking lot, stepped out of their vehicles, and approached the defendant on foot. Whatever the case may be, we do not regard these details as critical to our analysis.

[3]The precise manner in which the defendant's performance of the "one-legged stand" test disclosed the wallet in his waistband is unclear from the record on the motion to suppress. At trial, the record indicated that the shirt that the defendant was holding in his hand had concealed the wallet. Apparently, when he raised his arms for balance during the "one-legged stand" test, the wallet was revealed. Whatever the mechanism of the wallet's disclosure, it is clear that it would not have been observed by the officers but for the defendant's performance of the test.

[4]The testimony offered at the hearing on the defendant's motion to suppress did not make clear the precise wording of the officer's question.

ment," the court in *Blais* held that, to request the performance of a field sobriety test, a police officer need have only reasonable suspicion, as opposed to probable cause, to believe that an individual is operating a motor vehicle while under the influence of drugs or alcohol. See *id.* at 297-298, quoting from *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). In so ruling, the court noted that "brief, scarcely burdensome steps [are] involved in administering these tests." *Blais*, 428 Mass. at 298.

The reasonable suspicion standard is also appropriate to G. L. c. 111B, § 8, the protective custody statute. Pursuant to that law, the police may take an individual into protective custody if they determine that the person is "incapacitated." G. L. c. 111B, § 8. "Incapacitated" is defined as "the condition of an intoxicated person who, by reason of the consumption of intoxicating liquor is (1) unconscious, (2) in need of medical attention, (3) likely to suffer or cause physical harm or damage property, or (4) disorderly." G. L. c. 111B, § 3. Section 8 further states that, in order to determine whether or not such person is intoxicated, "the police officer may request the person to submit to reasonable tests of coordination, coherency of speech, and breath." G. L. c. 111B, § 8. Thus, the Commonwealth argues that the police officers were acting in accordance with the protective custody statute which authorized them to administer a field sobriety test to the defendant to determine if he was intoxicated.

The defendant asserts that it is irrelevant that the police were trying to determine whether or not he was intoxicated. He argues that the police had no right to ask him to perform field sobriety tests unless they first had reason to believe that he was incapacitated within the meaning of G. L. c. 111B, § 3.[5] We agree with the defendant's contention, but find that reasonable suspicion existed on these facts.

Officer Dunn had noticed the smell of liquor on the defendant's breath during the initial encounter. When Officer Dunn

---

[5]Because the statute defines "incapacitated" as the status of "an intoxicated person who, by reason of the consumption of intoxicating liquor," suffers certain enumerated conditions, it would not have been possible for the officers reasonably to believe the defendant was incapacitated without first determining that the defendant had consumed alcohol to the point of intoxication. We understand the defendant's argument to be that the officers were required to have reason to believe that the defendant, beyond being intoxicated, also met one or more of the criteria enumerated in the statutory definition of "incapacitated." See G. L. c. 111B, § 3.

and Lieutenant Moran approached the defendant the second time, and asked the defendant if he had been drinking, the defendant admitted that he had. Moreover, Officer Dunn had seen the defendant walking, apparently intoxicated, in the middle of the road, shortly after 3:00 A.M. These facts supported a reasonable belief that the defendant was "likely to suffer . . . physical harm." G. L. c. 111B, § 3. On these facts, it was reasonable for the officers to ask the defendant to perform sobriety tests.

Nor is it critical that Officer Dunn did not place the defendant in protective custody after he first chanced upon him in the middle of the road. At that point, Officer Dunn was responding to a report of a break-in. It would have been entirely reasonable for the officer to consider the break-in a more pressing matter than the defendant's possible incapacity.

The defendant also argues that the officers, in conducting the field sobriety tests, were motivated by a desire to unearth evidence regarding the burglary. It appears unlikely that such was indeed the officers' intent. It would require clairvoyance of the highest order for the officers to expect to uncover evidence of a burglary through the performance of field sobriety tests. But more importantly, "police conduct is to be judged 'under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved.' " *Commonwealth* v. *Ceria*, 13 Mass. App. Ct. 230, 235 (1982), quoting from *Scott* v. *United States*, 436 U.S. 128, 138 (1978). See *Commonwealth* v. *Tremblay*, 48 Mass. App. Ct. 454, 460-462 (2000). Put another way, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Scott* v. *United States*, 436 U.S. at 138, quoted with approval in *Commonwealth* v. *Blais*, 428 Mass. at 296-297. Therefore, regardless of what evidence the officers may have hoped to unveil, their actions were reasonable.

Because the field sobriety tests were reasonable, the next inquiry is whether the police had probable cause to confiscate the wallet and open it. That the defendant attempted to flee after he was asked about the wallet, coupled with his presence, in the dead of night, near the scene of a recent burglary in which a wallet had been stolen, was sufficient to give the police prob-

able cause. The defendant does not seriously contend to the contrary. The motion to suppress was properly denied.

2. *Sufficiency of the evidence.* The defendant asserts that the evidence was insufficient, as matter of law, to convict him of breaking and entering in the nighttime with the intent to commit a felony. See generally G. L. c. 266, § 16. This argument is without merit. There is no question that the victim's home was broken into and that his wallet was stolen. That this item was found on the defendant's person, together with the fact that the defendant was found walking in the street near the victim's home, with no other pedestrians in the area, at approximately 3:00 A.M., shortly after the break-in occurred, and the fact that the defendant fled when questioned about the wallet, is sufficient to establish that the defendant is the person who broke into the victim's home and stole the wallet and keys. See *Commonwealth* v. *MacLeod*, 9 Mass. App. Ct. 934, 935 (1980) (possession of stolen property, together with evidence of consciousness of guilt, sufficient to establish breaking and entering with the intent to commit larceny). Cf. *Commonwealth* v. *Nadworny*, 396 Mass. 342, 354 (1985) (circumstantial evidence is competent to establish guilt beyond a reasonable doubt), cert. denied, 477 U.S. 904 (1986).

3. *Consistency of convictions.* The defendant's final argument is that he should not have been convicted of both larceny and receiving stolen property. The Commonwealth concedes that these two convictions are indeed inconsistent. See *Commonwealth* v. *Nascimento*, 421 Mass. 677, 682 (1996). The only remaining question pertains to the proper remedy.

The defendant argues that his case should be remanded for a determination of which conviction should be dismissed. The only rationale the defendant offers for his proposed remedy is that there is no direct evidence of larceny, or of receiving stolen property. But it makes no difference whether there was conclusive, direct evidence; the circumstantial evidence was sufficient to support either of the convictions.

"Where the evidence has warranted a finding beyond a reasonable doubt of each element of a crime involving larceny, we see no reason to burden the judicial system with a new trial just because . . . the defendant [was found] guilty of receiving the same stolen property. Dismissal of the receiving stolen property count would give the defendant all that he was entitled to . . . . This is the rule . . . ." *Commonwealth* v. *Nascimento*,

421 Mass. at 684-685, and authorities cited. *Commonwealth* v. *Hinckley*, 422 Mass. 261, 262 n.1 (1996). Moreover, the defendant received identical sentences, to run concurrently, for each conviction. Thus, he is not in any way prejudiced by dismissal of the receiving stolen property conviction.

In sum, the convictions for larceny and breaking and entering in the nighttime with the intent to commit a felony are affirmed. The conviction for receiving stolen property is to be vacated, and that count of the complaint is to be dismissed.

*So ordered.*