Agnes, A.J.
The defendant William Vasquez is charged in indictments with drug distribution offenses involving heroin and cocaine. He has filed a pretrial motion to suppress evidence seized as a result of a warrantless search of his apartment by the Lawrence and State Police on February 11, 2002. Based on the credible evidence presented at the hearing on the defendant’s motion, I make the following findings of fact and rulings of law.
FINDINGS OF FACT
On February 11, 2002, Detective Mark Ciccarelli of the Lawrence Police Department, a 13-year veteran, was assigned to a Special Operations Unit investigating street level narcotics dealing in the City of Lawrence. At approximately 1:00 p.m., he learned that other officers had arrested an individual with a last name of Mateo for drug offenses and that Mateo identified his supplier as a person named “Willie” who was selling drugs from his first floor apartment at 137 Exchange Street in Lawrence. Detective Ciccarelli also learned that Mateo told the police that Willie sometimes sold drugs for cash and at other times took stolen merchandise in trade for drugs. The individual named Mateo also told the police he had been inside Willie’s apartment to buy drugs and had observed stolen electronic items there. Mateo provided the police with Willie’s cell telephone number. Mateo reported that when he wanted to buy drugs, he contacted Willie by cell phone and then went to Willie’s first-floor apartment at 137 Exchange Street and entered through a rear door. In the past he had purchased quantities of cocaine and heroin from Willie. He indicated that he had purchased drugs from Willie as recently as the day before.
Based on this information, detective Ciccarelli set up surveillance at 137 Exchange Street. Soon after the surveillance began, the police observed a black motor vehicle bearing New Hampshire Registration plates approach 137 Exchange Street. The car was operated by a female and contained a male in the passenger seat. It came to a stop near 137 Exchange street. The male passenger exited the vehicle, but then got back inside. The car drove around the corner and returned and parked near 137 Exchange Street. The male passenger entered 137 Exchange Street through a rear door. A few minutes later, this same individual exited from 137 Exchange Street, and got back into the car which then drove away.
This motor vehicle was stopped by the police a few blocks away from 137 Exchange Street. As the officers approached the vehicle, the male passenger, later identified as Jose Hernandez, was observed to be hiding or moving something between the seats. He was ordered out of the vehicle. When he exited, the police observed a handgun and small packets containing a substance consistent with heroin. Nine of the packets contained the dinosaur brand name and the others contained the eagle brand name. An additional quantity of heroin was found in between the seats which bore the dinosaur brand name, along with a glassine “twist” containing a “hit” of cocaine. Mr. Hernandez told the police that he had purchased the drugs from someone named “Willie” in his first-floor apartment at 137 Exchange Street. He gave Willie’s cell phone number to the police. This telephone number matched the number provided earlier by Mr. Mateo.
Armed with this information, detective Ciccarelli and three other officers proceeded immediately to the rear door of 137 Exchange Street. No effort was made to set up a controlled buy. No effort was made to obtain a search warrant. As the officers were proceeding to the door, a young boy approached who later turned out to be the son of Denise Delacruz who was on his way home from school. He was with the police when they knocked on the door. The police identified themselves and stated that they had her son. The door was answered by an Hispanic female later identified as Denise Delacruz. Without asking for or obtaining her consent, the police (along with the young boy) entered the apartment and, in the kitchen area, told her they were involved in a drug investigation, and were looking for someone named Willie. The police addressed Ms. Delacruz in English and she responded in English. Ms. Delacruz has four children living with her ranging in age from 6 years to 16 years old. One of her children, who was present at the time of the police entry, has mental health problems and takes psychoactive medications. The police asked her if Willie was at home. She replied, “I don’t know.” They also asked her if she had any objection if they looked around the apartment for Willie. They also told her that if she refused, they would obtain a search warrant and the Department of *2 Social Services could become involved and take her children.
Ms. Delacruz agreed to let the police search her apartment. The police then fanned out throughout the apartment. One of the bedroom doors was locked from the inside. The police called out Willie’s name and ordered him to open the door and come out. He complied. The police pat frisked him and found a film-iype canister inside the pouch area of his outer sweatshirt. This container was opened and found to contain 7 twists containing a white powder believed to be cocaine. The police also seized $400 in United States currency from his person. The defendant was placed under arrest, and handcuffed.
At this point, the police advised Mrs. Delacruz of her Miranda rights, briefly explained their investigation to her, told her they did not believe she was involved, and asked her if she would consent to a thorough search of the apartment. She agreed to allow them to conduct a search and she signed a consent form in Spanish. It was described to her by the police as “a consent form.’’ She read it in Spanish and understood the terms of this form, and signed it. A copy was received in evidence (exhibit 1).[1] As a result of this further search by the police, a number of empty bags bearing the dinosaur brand, which appeared to have previously contained heroin, were found in the bedroom along with glassine twists of cocaine, an electronic scale, and in a closed, but unlocked strongbox $960.00 in cash. This was the same room where the defendant had been hiding. A heat sealing device was found in the kitchen area. Mrs. Delacruz pointed out some of the merchandise that belonged to her and other items that belonged to the defendant and that appeared to have been stolen, including electronic items such as stereos, cellular telephones etc., still packed in their original retail merchandise boxes. These items were seized by the police.
DISCUSSION
1. Consent
In Massachusetts, the law requires the Commonwealth to establish by a preponderance of the evidence that the party reportedly giving consent did so “unfettered by coercion, express or implied,” and did “something more than mere acquiescence to a claim of lawful authority.” Commonwealth v. Walker, 370 Mass. 548, 555, cert. den., 429 U.S. 943 (1976). Although there is no duty to advise a person that they may refuse to give consent; see Commonwealth v. Blais, 428 Mass. 294, 300 n. 4 (1998) (field sobriety tests); Commonwealth v. Sanna, 424 Mass. 92, 97-98 (1997) (search of a home); it is a factor that may be considered. The voluntariness of consent “is a question of fact to be determined in the circumstances of each case, with the burden of proof on the government.” Commonwealth v. Aguiar, 370 Mass. 490, 496 (1976), citing Commonwealth v. Mendes, 361 Mass. 507, 512-13 (1972). Evidence obtained as a result of consent that is not freely and voluntarily given is generally not admissible. See Commonwealth v. Loughlin, 385 Mass. 60, 63 (1982). Despite the evidence of a written consent, based on the totality of the evidence presented to me, the Commonwealth has not met its burden of proving that Ms. Delacruz gave her consent to either the initial police entry, or the subsequent search.
The above findings of fact indicate that the police made their entry into the premises without asking for or obtaining the consent of Mrs. Delacruz. Her failure to lodge any specific objection to the police entry is of no significance under the circumstances. Her subsequent agreement to sign the consent form is of no legal significance because it was obtained as a result of a prior illegality, viz., the unconsented, warrantless entry. See Commonwealth v. Midi, 54 Mass.App.Ct. 591 (1999) (“When consent to search is obtained through exploitation of a prior illegality, particularly very close in time following the prior illegality, the consent has not been regarded as freely given. Evidence gathered in a search allowed by such a compromised consent has been thought to be tainted and inadmissible”).
This case is very much like the circumstances in Commonwealth v. Midi, supra, where Judge Kass made the following observation that is relevant to the analysis of the facts here.
It will be recalled that the avowed purpose of the police officers’ mission to 2 Huntington Street was to arrest Pierce. They held no warrant so to do. As a baseline principle, police are not free, without a warrant for an arrest, to enter a suspect’s home to make a routine felony arrest. Payton v. New York, 445 U.S. 573, 588-90 (1980); Commonwealth v. Forde, 367 Mass. 798, 805-06 (1975); Smith, Criminal Practice and Procedure §76 (2d ed. 1983 & Supp. 1998). The right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one’s privacy. It was just this sort of intrusion that the Fourth Amendment was designed to circumscribe by the general requirement of a judicial determination of probable cause. Commonwealth v. Forde, supra at 805. See Commonwealth v. DiGeronimo, 38 Mass.App.Ct. 714, 720 (1995), in which we relatively recently rehearsed the law of warrantless entry.
Midi, supra, 46 Mass.App.Ct. at 593-94 (quotations omitted). Under the circumstances, it cannot be said that the Commonwealth has established that Ms. Delacruz freely and voluntarily consented to allow the police to enter and search her apartment.
2. Exigent Circumstances
Both the Fourth Amendment to the United States Constitution and Article 14 of the Massachusetts Declaration of Rights regard the use of a judicially approved warrant as a necessary prerequisite to a lawful search or seizure subject only to a limited number of established exceptions. See, e.g., Commonwealth v. *3 DiToro, 51 Mass.App.Ct. 191, 195 (2001). With respect to an arrest, in the absence of exigent circumstances or consent, the police may not make a warrantless entry into a person’s dwelling or the dwelling of a third person in order to effect the arrest of a suspect without an arrest warrant (in the case of the person’s own dwelling), or an arrest warrant and a search warrant (in the case of a person who is inside a third parly’s dwelling). Commonwealth v. DeRosia, 402 Mass. 284, 285 (1988). This rule is based on the high regard the law has for an individual’s expectation of privacy in the home. See generally Commonwealth v. Forde, 367 Mass. 798 (1975).
As in Commonwealth v. Midi, supra, the police were not confronted with exigent circumstances that compelled them to act before a warrant could be obtained. “Exigencies, such as danger, the possibility of a suspect’s flight, the possibility that evidence may be destroyed, or the prospect that a further crime may be committed, suspend the operation of the basic rule.” Midi, supra at 594. See also Commonwealth v. DiGeronimo, 38 Mass.App.Ct. 714, 722 (1995) (burden is on the government to demonstrate an urgent need to conduct the search and the absence of time in which to obtain a search warrant). Here, there was no evidence offered by the Commonwealth that would justify the failure to obtain a search warrant. As the Appeals Court observed in Midi, supra, “(r)ather, the requirement of an arrest warrant to make a routine arrest in a suspect’s home seems simply not to have been taken into account.” Id. at 594.
CONCLUSION
This is a case in which the police conducted a sound investigation and developed a strong case of probable cause to believe that the defendant was selling heroin and cocaine from the first floor apartment of 137 Exchange Street. The police had several options. They had the option to further strengthen their case by conducting a controlled buy. They had the option to proceed by obtaining an arrest warrant and a search warrant which, in all likelihood, would have resulted in a solid arrest of the defendant and the seizure of drugs and drug paraphernalia. Instead, they chose to enter a home without a warrant and without exigent circumstances on the basis that valid consent from someone in control of the premises could be obtained. This is not only a high risk procedure from a law enforcement standpoint, but it undermines the respect accorded by the law for the privacy interest that individuals enjoy in their homes. See Commonwealth v. Blood, 400 Mass. 61, 69 (1987) (citation and quotation omitted). Furthermore, the decision to proceed to enter a home without a warrant in circumstances in which the exigencies are not compelling, Le., no immediate threat of destruction of evidence, flight, or danger to a third party, reflects a misunderstanding of the fundamental importance of warrants in our system of criminal justice.
The language and structure of art. 14 reflects John Adams’s adoption of Otis’s views. Beginning with the prohibition of “unreasonable” searches and seizures, art. 14 moves on to define the fundamental components of a constitutionally reasonable search or seizure: First, magistratesrather than law enforcement agentscontrol the decision whether to effectuate a search and seizure, including the seizure or arrest of a person. Second, law enforcement agents bear the burden of justifying their intrusion into a person’s freedom by presenting the magistrate with sufficient grounds to support the search or the seizure. These two elements are the essence of the constitutional norm regarding searches and seizures, today no less than in 1780.
Jenkins v. Chief Justice of the District Court, 416 Mass. 221, 234 (1993).
The proliferation of illegal drugs is a cancer on our society. Billions of dollars are spent each year on interdiction, investigation, treatment and prevention and yet the problem persists. Police and prosecutors don’t have the resources to properly investigate all reports they receive about illegal drug use. However, if the practice develops to proceed to make an arrest inside a home without first applying for a search warrant or an arrest warrant, even when the evidence of probable cause is overwhelming, we will have crossed the line drawn by John Adams in Article 14 of the Declaration of Rights and lost something of our liberty.
For the above reasons, the defendant’s motion to suppress evidence seized from the first-floor apartment of 137 Exchange Street[2] is ALLOWED.

 yhe form was described as a consent form. Ms. Delacruz testified that she understood it to be a consent form. However, the Commonwealth did not translate this form and offer the translation into evidence.

 This includes the items removed from the defendant’s person (film container) during the pat frisk.