## Commonwealth *vs.* Emily Carson.

No. 07-P-603.

Bristol. January 17, 2008. - August 15, 2008.

Present: McHugh, Armstrong, & Meade, JJ.

*Motor Vehicle,* Operating under the influence. *Constitutional Law,* Blood test, Breathalyzer test. *Search and Seizure,* Consent. *Evidence,* Blood alcohol test, Breathalyzer test.

A District Court judge properly suppressed the results of a blood test performed on the criminal defendant, where, in the circumstances of the case, the consent obtained from the defendant did not meet even the minimal criteria of G. L. c. 90, § 24(1)(*e*) and (*f*). [370-371]

Complaint received and sworn to in the Attleboro Division of the District Court Department on August 9, 2004.

A pretrial motion to suppress evidence was heard by *David G. Nagle, Jr.,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Roderick L. Ireland,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Craig A. Souza,* Assistant District Attorney, for the Commonwealth.

*Katie Cook Rayburn* for the defendant.

Armstrong, J. Under the procedures established by G. L. c. 278, § 28E, and Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996), the Commonwealth appeals from an order by a District Court judge suppressing the results of a blood test performed at Sturdy Memorial Hospital in the early morning hours of August 9, 2004. The judge's findings of fact and other undisputed evidence in the record establish the following. At about 9:30 p.m. on August 8, 2004, a car driven by the twenty year old defendant struck two female pedestrians on

Route 1 in North Attleborough, severely injuring (and ultimately killing) them. There was evidence of marijuana around the defendant's car, and she was seen passing a packet to her boyfriend (who had been following the defendant's car on his motorcycle), who attempted to dispose of the packet surreptitiously. The defendant failed field sobriety tests and admitted that she had consumed a single can of beer at a gathering she and her boyfriend had been attending before the accident. She declined a breathalyzer test. She was arrested and taken to the police station.

After booking she was taken to an interview room where she was questioned by Detective Lieutenant Dawes. The interview was videotaped. During the first part of the interview she appeared coherent (although very upset) and responsive to questions. She agreed to write and did write out an account of the accident that was clear in both content and penmanship. At some point during that interview (the videotape is not before us in this appeal although the judge viewed it in its entirety), the defendant was informed by Lieutenant Dawes that one of the two women pedestrians had died. He testified that she did not show a marked reaction at that time. Lieutenant Dawes left the interview room after a time, leaving the door open. The defendant sat for a few minutes, occasionally studying her fingernails. Then she walked out of the room.

There was no testimony concerning what may have occurred outside the interview room, but when the defendant returned a few minutes later, her demeanor had undergone a radical transformation. According to the judge's findings:

> "She was sobbing and crying uncontrollably. She went down on her knees rocking back and forth repeating over and over, 'Oh God, Oh God, help me . . . please . . . please.' She then asked for her mother repeatedly over and over. . . . At one point she screamed out the door, 'Don't leave me here, I'm too scared oh my God,' then continued to call for her mother ('mommy, mommy, mommy . . .'). She yelled out the door during this time saying she was going to 'freak out' if they didn't bring her mother."

The tape concluded at this point. The defendant was brought downstairs to the detention area and left alone for one hour in a

cell. Lieutenant Dawes then approached her and asked if she would consent to a blood test. She acquiesced. The lieutenant drew up a cryptic writing to serve as a consent form[1] and had her sign it. He and two other officers countersigned it. One then drove her to the hospital ten minutes away. A phlebotomist first looked to see if the defendant had signed a consent form and was shown the handwritten consent. The phlebotomist then waited for a period of several minutes before drawing blood because the defendant was extremely distraught, kneeling on the bed, rocking back and forth, and vomiting or dry-heaving. After several minutes the defendant calmed down enough to hold her arm for the phlebotomist, who described the defendant as cooperative. The police officer who had driven her to the hospital watched the entire procedure from a distance of six feet.

The defendant claims that the blood testing was done without her consent. Where, as here, there is probable cause to believe that a defendant has been operating a motor vehicle while impaired, the defendant has no constitutional right to refuse a blood test or breathalyzer test. *Commonwealth* v. *Davidson*, 27 Mass. App. Ct. 846, 848 (1989). Nevertheless, the applicable statute, G. L. c. 90, § 24(1)(*e*) and (*f*), requires a defendant's actual consent to breath and blood testing as a condition of admissibility of the results in evidence. The consent required is not the "knowing, voluntary and intelligent" consent required for waiver of constitutional rights, but the consent of customary usage indicated by criteria such as verbal agreement to undergo, lack of objection to, or cooperation in the performance of, the blood testing. See *Commonwealth* v. *Angivoni*, 383 Mass. 30, 33-35 (1981)[2]; *Commonwealth* v. *Davidson*, 27 Mass. App. Ct. at 848-850. Counsel for the parties and the experienced judge were fully aware of the minimal criteria satisfying the consent requirement of the statute. The judge did not err in finding even those minima not met. The judge was not inappropriately mistrustful of the fact that all significant events occurred off-

---

[1] The writing stated: "8-9-04 1:20 A.M. Emily Carson advised of consent to Blood Test."

[2] Unlike the situation described in *Angivoni*, the police here had probable cause to believe the defendant had been operating her vehicle under the influence of alcohol or drugs.

tape — the unexplained change in the defendant's demeanor, the giving of consent to the blood test (especially as she had earlier declined the breathalyzer test), and the drawing up and her signing of what the judge described as the badly drafted and cryptic consent form that he could not "rely on . . . to establish a voluntary consent."

The statute requires a suspect's consent, and whether the defendant consented, even under the *Davidson* criteria, is a question of fact. The evidence here did not require the judge, as matter of law, to find that there was a meaningful consent, as contrasted with robotic manifestations of acquiescence by one no longer possessed of the ability to choose. We respect the judge's findings of fact. *Commonwealth* v. *Angivoni,* 383 Mass. at 33-34. The judge's order of suppression must therefore be affirmed.

*So ordered.*