## Commonwealth vs. Victor M. Lopes.

Plymouth. December 7, 2010. - March 29, 2011.

Present: Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Constitutional Law,* Self-incrimination. *Evidence,* Breathalyzer test, Relevancy and materiality. *Motor Vehicle,* Operating under the influence. *Practice, Criminal,* Redaction.

At the trial of a criminal complaint charging operation of a motor vehicle while under the influence of intoxicating liquor and negligent operation of a motor vehicle on a public way, the admission in evidence of a breathalyzer consent form, without redaction of language indicating that the defendant was notified of his right to receive an independent medical examination, did not violate the defendant's privilege against self-incrimination as provided in art. 12 of the Massachusetts Declaration of Rights, where evidence of notification to the defendant of the right to such an examination was advisory, not compulsory, and the mere fact that evidence of an independent exculpatory examination was not adduced at trial did not necessarily mean that the defendant had refused to exercise the right in recognition of his guilt. [169-172]

At the trial of a criminal complaint charging operation of a motor vehicle while under the influence of intoxicating liquor and negligent operation of a motor vehicle on a public way, the judge erred in admitting in evidence, without redaction, a breathalyzer consent form containing language indicating that the defendant was notified of his right to receive an independent medical examination, where evidence that the defendant was notified on the consent form of his right to an examination neither vouched for the credibility of a breathalyzer measurement nor assisted the jury in determining the proper weight to assign to the breathalyzer test results; however, the error plainly was not prejudicial, given the other evidence in the case. [172-176]

Complaint received and sworn to in the Brockton Division of the District Court Department on June 21, 2006.

A pretrial motion to suppress evidence was heard by *Julie J. Bernard,* J., and the case was tried before *James F.X. Dinneen,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Kimberly Wittenberg Lurie* for the defendant.

*Suzanne D. McDonough,* Assistant District Attorney, for the Commonwealth.

CORDY, J. In this case, we consider the appeal of Victor M. Lopes from his convictions of operating a motor vehicle while under the influence of intoxicating liquor in violation of G. L. c. 90, § 24 (1) (*a*) (1), and negligent operation of a motor vehicle on a public way in violation of G. L. c. 90, § 24 (2) (*a*). We are presented with the question whether the admission in evidence of a consent form without redaction of language indicating that Lopes was notified of his right under G. L. c. 263, § 5A (§ 5A), to receive an independent medical examination was a violation of his privilege against self-incrimination as provided in art. 12 of the Massachusetts Declaration of Rights, or otherwise amounted to prejudicial error. We conclude that it was neither. However, the evidence of notification of the right embodied in § 5A was not relevant to any issue of fact for the jury, nor did it bear any relation to the weight or credibility of the results of a blood alcohol content test admitted in evidence. As such, it would have been better practice to have redacted the form before it was entered in evidence and presented to the jury.

1. *Background.*[1] On the morning of June 20, 2006, Lopes drove a Nissan Pathfinder sport utility vehicle in reverse, traveling northbound in a southbound lane on Main Street in Brockton. A police officer pressed the air horn in his cruiser to alert Lopes that oncoming traffic was approaching. Lopes brought his vehicle to a stop, nearly striking an approaching automobile. The officer activated his siren, and Lopes pulled his vehicle into a nearby parking spot. The officer asked Lopes to produce his driver's license and vehicle registration, and Lopes stated that he did not have either. The officer smelled an odor of alcohol on Lopes's breath. Lopes told the officer that he had been at a friend's house watching a televised World Cup soccer match earlier in the morning, ate a meal, and drank some beer and wine. Lopes insisted that he was not intoxicated and offered to take a field sobriety test. The officer asked Lopes to perform the "alphabet" test — a recitation of the English-language alphabet from the letter A to the letter M, but he first inquired of Lopes, whose native language is Portuguese, whether he knew the English alphabet.

---

[1]These facts are drawn from the evidence at trial, viewed in its light most favorable to the Commonwealth. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979).

Lopes responded that he did. Lopes then recited the alphabet from A to E or F before stopping. His second attempt to recite the alphabet also ended in failure.[2]

Next, the officer instructed Lopes to perform the "one-leg stand" test. The officer first demonstrated this test by standing with one foot up, placing his hands at his sides, and counting to thirty. Lopes attempted the same, but, according to the officer, lifted his arms off his hips several times and lost his balance before he counted to "thirteen." Last, the officer asked Lopes to perform the "finger-to-nose" test, requiring him to close his eyes and attempt to draw the tip of his index finger to his nose with one hand, and then the other. The officer testified that as soon as Lopes closed his eyes, he nearly fell to the ground. At this point, the officer placed Lopes under arrest and transported him to the police station.

At the police station, a sergeant sought Lopes's consent to administer a chemical analysis test of his breath to determine the alcohol content in his blood (breathalyzer test). The sergeant was certified by the Commonwealth to perform the breathalyzer test, and as required by statute, he read Lopes various rights attendant to the performance of such a test. See, e.g., G. L. c. 90, § 24 (consequences of failure or refusal to submit to breathalyzer test); G. L. c. 263, § 5A (right to independent medical examination); G. L. c. 276, § 33A (right to use telephone). These rights were also written in English on a form used by the Brockton police department labeled "Statutory Rights and Consent Form" (consent form). Quoting the language of § 5A, the consent form advises:

"A person held in custody at a police station or other place of detention, charged with operating a motor vehicle while under the influence of intoxicating liquor, shall have

---

[2]The police officer's testimony regarding the alphabet test was disputed by the defendant at trial. Lopes testified that he explained to the officer that it would be difficult for him to complete the recitation in English, and that he offered to perform the test in Portuguese, but no officers at the scene could accommodate that request. Consequently, Lopes testified, no alphabet test was performed. Lopes did testify that the officer asked him to count backward from the number 109 to the number 89, and he did so, only erring by continuing to the number 88 before stopping. The officer did not testify to administering such a test.

the right, at his request and at his expense, to be examined immediately by a physician selected by him. The police official in charge of such station or place of detention, or his designee, shall inform him of such right immediately upon being booked, and shall afford him a reasonable opportunity to exercise it. Such person shall, immediately upon being booked, be given a copy of this section unless such a copy is posted in the police station or other place of detention in a conspicuous place to which such person has access."

The consent form also explains the consequences of refusing to submit to a breathalyzer test (suspension of driver's license) and of registering a blood alcohol content by percentage of body weight higher than .08, which is a criminal violation of G. L. c. 90, § 24 (1) (a) (1).[3] At its end, the consent form includes boxes denominated "Yes" and "No" for a suspect to check, indicating consent or refusal of consent for submission to a breathalyzer test.

Lopes checked the "Yes" box on the form, indicating consent to the administration of a breathalyzer test, and signed his name on the line provided. The test was performed and measured Lopes's blood alcohol content at .25 per cent — .17 per cent points higher than the legal limit. See G. L. c. 90, § 24. Lopes was charged with operating a motor vehicle while under the influence of intoxicating liquor (OUI) in violation of G. L. c. 90, § 24 (1) (a) (1), and negligent operation of a motor vehicle on a public way in violation of G. L. c. 90, § 24 (2) (a).

At trial, the breath test analysis and records memorializing the periodic accuracy testing of the breathalyzer machine were admitted in evidence, see Commonwealth v. Barbeau, 411 Mass. 782, 786 (1992), as was a videotape of the entire booking process, including Lopes's performance of the breathalyzer test.[4] The judge also permitted the Commonwealth to introduce in evidence the entire consent form. Lopes's attorney objected to the admission of the first clause of the form (advising Lopes of his § 5A

---

[3]The consent form also explains the special provisions of G. L. c. 90F, § 11, that apply to persons operating commercial vehicles.

[4]Due to a mechanical problem, the audio portion was not captured on the recording.

right to obtain a medical examination by an independent physician) and requested its redaction. He argued that admission of language explaining this right, coupled with the fact that no independent examination would be offered in evidence, would make it evident to the jury (by implication) that Lopes declined to avail himself of that right. This combination of facts, defense counsel argued, created an inference of Lopes's consciousness of guilt in violation of his privilege against self-incrimination in art. 12.

The jury returned verdicts of guilty of OUI and negligent operation of a motor vehicle. It was Lopes's fifth OUI conviction, and he was sentenced to two and one-half years in a house of correction, with an additional year to serve on and after that sentence for the negligent operation of a motor vehicle. Lopes appealed, and we granted his application for direct appellate review.

2. *Discussion.* The arguments that Lopes presents on appeal are that the admission of the consent form without redaction of the portion notifying him of the right under § 5A to an independent medical examination (1) violated his privilege against self-incrimination under art. 12; and (2) constituted prejudicial error where it was not relevant to any contested issue at trial. We address each in turn.

a. *Self-incrimination.* Article 12 provides in part that no person shall "be compelled to accuse, or furnish evidence against himself." It protects against the admission in a criminal proceeding of evidence that is (1) made under compulsion from the government and (2) "testimonial or communicative" in nature. *Commonwealth* v. *McGrail*, 419 Mass. 774, 777-778 (1995). *Commonwealth* v. *Brennan*, 386 Mass. 772, 776-777 (1982). We have stated that, although the privilege against self-incrimination under art. 12 is broad, it protects only against the compulsion of communications or testimony and not against the production of real or physical evidence, such as fingerprints, photographs, lineups, blood samples, handwriting, and voice exemplars. See *id.* at 776, 780 (evidence of breathalyzer test results and field sobriety tests not communicative to extent necessary to evoke self-incrimination privilege). See also *Schmerber* v. *California*, 384 U.S. 757, 764 (1966). On the other hand, "testimonial" evidence is evidence that "reveals the subject's knowledge or

thoughts concerning some fact." *Commonwealth* v. *Brennan*, *supra* at 777-778. See *United States* v. *Wade*, 388 U.S. 218, 223 (1967).

In *Opinion of the Justices*, 412 Mass. 1201, 1211 (1992), we rendered an advisory opinion to the Senate where we opined that the admission of evidence of a defendant's refusal to consent to a breathalyzer test would be violative of this constitutional privilege because (1) evidence of refusal is clearly compelled by the government under a statutory scheme where the defendant must provide an immediate response to a police request for consent or refusal of consent to a breathalyzer test, and if he refuses, his driver's license is automatically suspended, G. L. c. 90, § 24 (1) (*f*); and (2) a refusal to consent to a breathalyzer test is testimonial in nature and communicates the defendant's consciousness of his own guilt. We said the refusal reveals the defendant's inculpatory thoughts and is akin to his stating, "I have had so much to drink that I know or at least suspect that I .am unable to pass the test." *Id.* at 1209. We concluded that the admissibility of such a refusal would place a defendant in a coercive "Catch-22" situation: Take the test and "furnish" incriminating real evidence against oneself, or refuse and produce adverse testimonial evidence of consciousness of guilt. *Id.* at 1211. "Therefore, such refusal evidence is both compelled and furnishes evidence against oneself" and would violate the privilege against self-incrimination of art. 12. *Id.*

Lopes impresses on the court that the admission in evidence that he was offered a right to an independent medical examination, coupled with the lack of evidence of results of such an examination, similarly violates the privilege against self-incrimination. He argues that the jury would infer from these facts that he declined to avail himself of the statutory right because he was conscious of his own guilt and aware of the futility of seeking an independent examination.

Admission of the language informing a defendant of his statutory right to an independent medical examination can be readily distinguished from the "Catch-22" scenario of refusal evidence. See G. L. c. 263, § 5A; *Opinion of the Justices, supra.* "[I]f the police, *by their request, force the defendant to choose* between two potentially inculpatory alternatives, the defendant's refusal

to comply with that request may not be introduced against him over objection without violating art. 12" (emphasis added). *Commonwealth* v. *Conkey*, 430 Mass. 139, 143 (1999), *S.C.*, 443 Mass. 60 (2004) (refusal to submit to fingerprint test inadmissible); *Commonwealth* v. *Hinckley*, 422 Mass. 261, 264, 266-267 (1996) (refusal to turn over sneakers inadmissible); *Commonwealth* v. *Lydon*, 413 Mass. 309, 314-315 (1992) (refusal to allow hand swabbing inadmissible). When presented with a police request to produce real evidence, a person's refusal is clearly compelled by the government. *Opinion of the Justices, supra* at 1211. See *Commonwealth* v. *Conkey, supra*; *Commonwealth* v. *Hinckley, supra*; *Commonwealth* v. *Lydon, supra*. The defendant is put on the "hot seat" by the presentation of a dichotomous demand for consent or refusal of consent, and such a demand, by necessity, will "force the defendant" to register a response. *Commonwealth* v. *Conkey, supra*.

By contrast, evidence of notification to the defendant of the right to a medical examination under § 5A is advisory, not compulsory. It is an announcement of the mere availability of an option. The statute simply requires police to "inform [the person in custody] of such right immediately upon being booked." G. L. c. 263, § 5A. This notification is not a police "request," nor does it "force the defendant to choose between two potentially inculpatory alternatives." *Commonwealth* v. *Conkey, supra*. That is, by notifying the defendant of the right, the police do not present him with a binary choice to invoke the right or forever waive it, nor is he compelled, or even asked, to provide an on-the-spot response. See G. L. c. 263, § 5A. What distinguishes the notification of the § 5A right from police requests for evidence, such as a breath sample for testing in a breathalyzer machine, is that the defendant remains in independent control not only of what his response will communicate, if anything, but also of when he will provide a response, if at all. In sum, a police officer's provision of a general notification of a defendant's § 5A right that, although time sensitive, requires no immediate invocation, cannot properly be construed as a compulsion and, as such, fails to qualify for the self-incrimination privilege of art. 12.[5]

---

[5]The present situation is distinguishable in another respect from those situations where the defendant is requested to turn over physical evidence to the

Nor does the constellation of facts presented at Lopes's trial amount to testimonial evidence. See *Opinion of the Justices*, 412 Mass. 1201, 1209, 1211 (1992). The mere fact that evidence of an independent exculpatory examination was not adduced at trial does not, necessarily, mean that the defendant refused to exercise the right in recognition of his guilt. There are many reasons that a person might decline to seek an independent medical examination other than a recognition of guilt. See G. L. c. 263, § 5A; *Opinion of the Justices, supra* at 1209. For one, § 5A affords a defendant the right to an independent examination, "at his expense, to be examined immediately by a physician selected by him." Some arrestees may be unable or unwilling to pay for an examination, or unable to arrange for independent transportation to a willing and capable physician in the often odd hours that OUI arrests occur. See *Commonwealth* v. *Rosewarne*, 410 Mass. 53, 55 (1991) (§ 5A does not require police to transport defendant to hospital); *Commonwealth* v. *Alano*, 388 Mass. 871, 879 (1983) (police may not hinder but need not assist defendant in reasonable attempts to obtain independent examination). Still other arrestees may have personal or religious reasons for not wanting a physical examination by a medical professional.[6]

b. *Relevance.* Having determined that the admission of the form without redaction of that portion notifying the defendant of his § 5A right was not unconstitutional, we turn to the question whether the jury's consideration of that language served any relevant evidentiary purpose.

To support a prima facie case for OUI, the prosecution must prove three elements: (1) the defendant was in physical operation of the vehicle; (2) on a public way or place to which the public has a right of access; and (3) the condition of the defendant was such that he either had a blood alcohol content percentage of .08 or greater or was impaired by the influence of intox-

---

police. In the case of an independent medical examination, no information is being garnered by the police.

[6]While mere evidence of notification of the right to an independent medical examination, as required by G. L. c. 263, § 5A, does not violate the self-incrimination privilege of art. 12, a different analysis might apply if the prosecutor attempted at trial to suggest an inference of guilt either by eliciting testimony from a police witness that the defendant did not avail himself of the statutory right, or by suggesting the same in closing argument. This is notably not the case here.

icating liquor. G. L. c. 90, § 24 (1) (*a*) (1). The first alternative of the third element is proved by admission in evidence of a report memorializing the results of a chemical test of the defendant's blood alcohol content, which in practice is nearly always conducted using a breathalyzer machine. See G. L. c. 90, § 24 (1) (*e*); *Commonwealth* v. *Steele*, 455 Mass. 209, 210-211 (2009).

General Laws c. 90, § 24 (1) (*e*), places several conditions on the admissibility of the results of a breathalyzer test, and the prosecution must prove compliance with those conditions as a foundational matter before the judge may admit the results in evidence.[7] Under G. L. c. 90, § 24 (1) (*e*), breathalyzer test results "shall be admissible and deemed relevant" only if the defendant actually consented to the test; was properly notified of the right to an independent medical examination under § 5A; and if the test's administrator promptly provided the defendant with the results of the test. The prosecution must also establish, as a predicate to admissibility, conformity with regulations governing annual certification and periodic testing of the breathalyzer machine.[8] G. L. c. 90, § 24K. *Commonwealth* v. *Barbeau*, 411 Mass. 782, 786 (1992).

In this case, the jury found Lopes guilty of OUI, based on the per se prong.[9] The consent form, including the section detailing the suspect's right to an independent medical examination under § 5A, was admitted in evidence over the objection of Lopes's

---

[7] In relevant part, the statute reads: "[E]vidence of the percentage, by weight, of alcohol in the defendant's blood at the time of the alleged offense . . . as indicated by a chemical test or analysis of his breath, shall be admissible and deemed relevant to the determination of the question of whether such defendant was at such time under the influence of intoxicating liquor; provided, however, that if such test or analysis was made by or at the direction of a police officer, it was made with the consent of the defendant, the results thereof were made available to him upon his request and the defendant was afforded a reasonable opportunity, at his request and at his expense, to have another such test or analysis made by a person or physician selected by him." G. L. c. 90, § 24 (1) (*e*).

[8] Pursuant to the statutory scheme, a person in custody must also be advised that his consent is required before a breathalyzer test may be conducted, and if that person refuses, his driver's license is automatically suspended for 180 days. G. L. c. 90, § 24 (1) (*f*).

[9] At trial, Lopes stipulated that he was both the operator of the vehicle and driving on a public way.

attorney. Lopes argues that this was error because the question whether the statutory predicates to admissibility were met, including whether he was informed of his § 5A right to a medical examination, was a foundational inquiry for the judge to consider, see G. L. c. 90, § 24 (1) (*e*), (*f*); G. L. c. 90, § 24K; G. L. c. 263, § 5A, and not an issue within the province of the jury's fact-finding duties. We agree.

The admissibility of breathalyzer test results is a question of law for the judge, and if the results are admissible, the jury may consider evidence to assist in determining the weight and credibility of those results.[10] See Mass. G. Evid. § 104(a), at 11 (2010) (preliminary questions concerning the admissibility of evidence "shall be made by the court"); *id.* at § 104(e) (judge's determination of facts necessary to answer questions of admissibility shall "not limit the right of any party to introduce before the jury evidence relevant to weight or credibility"); *Gorton* v. *Hadsell*, 9 Cush. 508, 511 (1852) ("it is the province of the judge . . . to decide any preliminary questions of fact, however intricate, the solution of which may be necessary to enable him to determine the other question of admissibility"). See also G. L. c. 90, § 24 (1) (*e*); *Commonwealth* v. *Yameen*, 401 Mass. 331, 336 (1987), cert. denied, 486 U.S. 1008 (1988); *Commonwealth* v. *Carson*, 72 Mass. App. Ct. 368, 370-371 (2008); *Commonwealth* v. *Davidson*, 27 Mass. App. Ct. 846, 847 n.2 (1989).

The judge was satisfied that the statutory prerequisites were met, and he admitted the results of the breathalyzer test in evidence.[11] The judge also admitted the consent form in evidence and declined to redact the contested portion because he concluded

---

[10]After a judge makes preliminary findings of fact in certain types of criminal cases, in order to permit the introduction of evidence, the judge must instruct the jurors to disregard the evidence if they do not believe that the preliminary facts exist. See Mass. G. Evid. § 104 note, at 13 (2010). See also, e.g., *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982) (humane practice rule); *Commonwealth* v. *Key*, 381 Mass. 19, 22 (1980) (dying declaration). Cf. G. L. c. 233, § 78 (business records). We have never held that the judge's preliminary finding of fact that a defendant voluntarily consented to a breathalyzer test under G. L. c. 90, § 24 (1) (*e*) and (*f*), or was informed of the right to an independent medical examination under G. L. c. 263, § 5A, is an occasion requiring such a jury instruction.

[11]It appears that the judge made this ruling based on the evidence admitted

that evidence of the range of options made available to Lopes was relevant to the weight and credibility of the breathalyzer test results.[12] This was error.

The results of a breathalyzer test memorialize a scientific measurement that, if properly administered on an accurate and unflawed device, would produce the same result whether or not the defendant was informed that he also could have an independent examination. As such, evidence that the defendant was notified of his § 5A right on the consent form neither vouches for the credibility of that quantitative measurement nor assists the jury in determining the proper weight to assign to the test results. See Mass. G. Evid. § 104(e), *supra.* Nor could that portion of the consent form constitute admissible direct evidence tending to prove the elements of the criminal offense (operation, public way, and impairment). See G. L. c. 90, § 24 (1) (*a*) (1).

In these circumstances, where the defendant conceded the voluntariness of consent, evidence that the defendant was advised of his rights attendant to § 5A, although probative of a predicate question of admissibility, is not relevant evidence for the jury.[13] As such, the judge should have redacted the challenged portion of the consent form.

The failure to do so, however, was plainly nonprejudicial. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). The jury were presented with evidence that, inter alia, demonstrated that the defendant was driving in reverse within striking distance of

---

at trial. In the context of a jury trial, the judge's decision with respect to the admissibility of the breathalyzer test results should be made prior to trial or in a voir dire proceeding outside the hearing of the jury.

[12]The judge also stated that evidence of notification of the right to an independent medical examination, as required by G. L. c. 263, § 5A, was relevant to the issue whether Lopes consented to administration of the breathalyzer test and should be viewed by the jury on that basis. This too was error. The issue of the validity of a defendant's consent is a preliminary question of fact concerning the admissibility of the results of the breathalyzer test and not an issue for the jury to consider in these circumstances. See G. L. c. 90, § 24 (1) (*e*); Mass. G. Evid., *supra* at § 104(a), at 11.

[13]It is conceivable that the theory of a defendant's case would revolve around a coerced breathalyzer examination, perhaps suggesting forged results or some other reason to distrust the test. In that case, evidence tending to show whether the defendant was informed of the right to an independent medical examination could be relevant to the issue of the voluntariness of consent. That is conspicuously not the case here, where the defendant conceded the voluntariness of the breathalyzer test.

other vehicles; failed field sobriety tests in the view of a trained police officer; and consented to a breathalyzer test that revealed a .25 per cent blood alcohol content, which more than satisfied the per se prong of the offense. G. L. c. 90, § 24 (1) (*a*) (1). We decline to disturb Lopes's convictions.

*Judgments affirmed.*