COMMONWEALTH vs. RICHARD G. BROWN.

No. 12-P-614.

Middlesex. April 18, 2013. - June 20, 2013.

Present: GREEN, CARHART, & AGNES, JJ.

*Motor Vehicle,* Operating under the influence. *Evidence,* Field sobriety test, Voluntariness of statement, Testimonial statement. *Constitutional Law,* Voluntariness of statement. *Practice, Criminal,* Voluntariness of statement.

Discussion of the prohibition under art. 12 of the Massachusetts Declaration of Rights against the use in a criminal proceeding of evidence that is the product of governmental compulsion [775-776] and testimonial [776-778], including the refusal to perform a field sobriety test.

At the trial of a criminal complaint charging the defendant with operating a motor vehicle while under the influence of alcohol, the defendant's statements regarding the difficulty of a field sobriety test or his inability to perform it, while testimonial, were available for use against him at trial, where such statements were not the product of compulsion within the meaning of art. 12 of the Massachusetts Declaration of Rights. [778-779]

COMPLAINT received and sworn to in the Malden Division of the District Court Department on May 24, 2010.

The case was heard by *J. Elizabeth Cremens,* J.

*Dana Alan Curhan* (*MarySita Miles* with him) for the defendant.

*Alexandra G. Watson,* Assistant District Attorney, for the Commonwealth.

AGNES, J. When a person who is suspected by the police of operating a motor vehicle on a public way while under the influence of alcohol refuses to submit to roadside tests commonly referred to as field sobriety tests, evidence of his refusal is not admissible at trial because it is regarded as compelled testimony in violation of art. 12 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Blais,* 428 Mass. 294, 298-299 (1998). In this case, we must decide whether compul-

sion, in a constitutional sense, is involved when such a person agrees to perform field sobriety tests, and then in attempting to perform a test makes statements about the difficulty of completing it or the inability to perform it. For the reasons which follow, we conclude that statements of a person's difficulty or inability to perform a field sobriety test like those involved in this case are not the product of compulsion within the meaning of art. 12 and thus are available for use against the individual at trial.

The defendant was convicted of operating a motor vehicle while under the influence of alcohol, second or subsequent offense, and found responsible for a marked lanes violation as a result of an incident which occurred on May 23, 2010, in Wakefield. See G. L. c. 90, § 24(1)(a)(1); G. L. c. 89, § 4B. The sole issue raised on appeal is the judge's denial of the defendant's pretrial motion in limine to exclude certain testimony by the investigating police officer about statements made by the defendant while he was attempting to perform the tests.

*Factual background.* The motion in limine is not included in the record. The motion was heard prior to the trial on the basis of argument by counsel. However, there is no dispute as to the essential facts, which we draw from the transcripts of the pretrial and trial proceedings viewed in the light most favorable to the Commonwealth. At approximately 1:30 A.M. on May 23, 2010, Wakefield police Officer Kelly Tobyne observed the defendant's black sport utility vehicle traveling on the wrong side of Nahant Street as it came around a turn. She activated her cruiser's blue lights. The defendant did not stop. She then activated her siren and pursued the defendant's vehicle for about three-tenths mile onto Broadway, where she observed it pull into a driveway on Lake Street. Officer Tobyne observed the defendant, Richard G. Brown, get out of his vehicle. He remarked, "Can't you guys just let me go home?" The defendant stated that he had only consumed a couple of beers. Officer Tobyne noted that the defendant's speech was slurred, his eyes were glassy, and there was an odor of an alcoholic beverage. Officer Tobyne ordered him to get back into his vehicle. By this time, Officer Erickson arrived at the scene.

The defendant was asked to step out of his vehicle and to

perform some field sobriety tests.[1] Officer Tobyne first explained and demonstrated how to perform the nine-step, heel to toe walk and turn test. The defendant did not complete the nine steps, did not touch heel to toe, extended his arms for balance as he walked, and appeared unsteady. The defendant asked how he had done. Officer Tobyne did not reply, but instead explained and demonstrated the next test, the one-legged stand, which requires one leg to be raised for a specified number of seconds. On the first attempt the defendant raised his leg, but immediately put it down. On his second attempt, the defendant lost his balance and stated, "I can't do this." The defendant was then arrested and transported to the Wakefield police station where he was booked.

*Discussion.* 1. *Standard of review.* After denying the defendant's pretrial motion in limine, the judge added, "I'll note your objection." When the evidence was offered at trial, the defendant did not renew his objection. The Commonwealth maintains that we should treat the issue as a claim of unpreserved error. In such a case, the standard of review is whether there was a substantial risk of a miscarriage of justice. The general rule is that the denial of a motion in limine does not, without more, preserve the issue for purposes of appellate review. See *Commonwealth* v. *Whelton*, 428 Mass. 24, 25 (1998); Mass. G. Evid. § 103(a)(3) (2013). There is no need to object at trial, however, when the

---

[1] Field sobriety tests "are based upon the relationship between intoxication and the loss of coordination which intoxication produces. They do not compel the subject to reveal his knowledge or thoughts. They only force him to exhibit his physical coordination, or lack thereof, for observation by a police officer." *Commonwealth* v. *Brennan*, 386 Mass. 772, 779 (1982). "A lay juror understands that intoxication leads to diminished balance, coordination, and mental acuity from common experience and knowledge." *Commonwealth* v. *Sands*, 424 Mass. 184, 188 (1997). A test like the horizontal gaze nystagmus (HGN) test is different because the underlying principle is grounded in science, not common experience. *Ibid.* (results of an HGN field sobriety test are not admissible without testimony from a qualified expert).

The testimony of a police officer about the results of ordinary field sobriety tests like those involved in this case, see *infra*, is lay witness testimony, not expert witness testimony. See Mass. G. Evid. § 701 (2013). See also *Commonwealth* v. *Sands*, *supra*; *State* v. *Meador*, 674 So. 2d 826, 831 (Fla. Dist. Ct. App. 1996); *Crampton* v. *State*, 71 Md. App. 375, 388 (Ct. Spec. App. 1987). See generally *United States* v. *Horn*, 185 F. Supp. 2d 530, 535-546 (D. Md. 2002) (comprehensive discussion of the history of field sobriety tests, and why the results, though relevant and admissible as circumstantial evidence of impairment, are not scientific evidence).

pretrial motion is based on constitutional grounds. See *Commonwealth* v. *Whelton, supra* at 26. Here, the defendant's claim was based entirely on art. 12. In view of the result we reach, it is unnecessary to decide the point. We will assume that the issue was preserved.

2. *The constitutional framework.* Article 12 prohibits the use in a criminal proceeding of evidence that is (1) the product of governmental compulsion[2] and (2) testimonial. See *Commonwealth* v. *Lopes,* 459 Mass. 165, 169 (2011).[3] See also *Commonwealth* v. *Brennan,* 386 Mass. 772, 783 (1982) (privilege against self-incrimination expressed in art. 12 does not extend to noncommunicative evidence).

a. *Governmental compulsion.* In cases involving the refusal to perform a test, the element of governmental compulsion is required whether the police inform the defendant that he may take the test, request that he take the test, or command him to take the test. As the Supreme Judicial Court observed in *Opinion of the Justices,* 412 Mass. 1201, 1211 (1992), in reviewing proposed legislation, "[t]here is compulsion, therefore, on the accused to choose between two alternatives, both of which are capable of producing evidence against him. The proposed statute, therefore, uses the threat of adverse testimonial evidence as a coercive tool to compel submission to a breathalyzer test. The accused is thus placed in a 'Catch-22' situation: take the test and perhaps produce potentially incriminating real evidence; refuse and have adverse testimonial evidence used against him at trial."[4] The basis for the Massachusetts rule that a refusal to perform a test offered by the police is compelled testimony is

---

[2]"Evidence discovered and seized by private parties is admissible without regard to the methods used, unless State officials have instigated or participated in the search." *Commonwealth* v. *Leone,* 386 Mass. 329, 333 (1982). See *Commonwealth* v. *Arruda,* 73 Mass. App. Ct. 901, 904 (2008) ("The State action requirement of art. 12 is well established. It is governmental, not private, compulsion that is prohibited").

[3]The one circumstance in which an individual may be compelled to provide testimonial evidence is when he or she has received a grant of transactional immunity. See *Attorney Gen.* v. *Colleton,* 387 Mass. 790, 801 (1982).

[4]The existence of compulsion does not turn on the form of words used by the police. "In instances of a false alibi, fleeing the vicinity of the crime, or making false exculpatory statements, for example, compulsion is absent, and art. 12 does not bar the admission of such evidence. If, however, . . . the

"[t]he choice either to produce incriminating evidence or be punished with an inference of guilt." *Commonwealth* v. *Bly*, 448 Mass. 473, 497 (2007). See *State* v. *Fish*, 321 Or. 48, 58 (1995) ("Thus, when an individual is given a 'choice' between various courses of conduct, the determination of whether the 'choice' constitutes compulsion depends on the nature of the options. Where every 'choice' is a course of conduct that the state could not compel an individual to take, mandating by law that an individual make a 'choice' among them constitutes compulsion").[5]

b. *Testimonial evidence.* Tests of physical coordination, such as walking a straight line, raising one leg for a specified number of seconds, and touching one's nose with one's index finger, are not testimonial because they do not "reveal[] the subject's knowledge or thoughts concerning some fact." *Commonwealth* v. *Brennan*, 386 Mass. 772, 778 (1982). The responses of a person impaired by alcohol to such tests are incriminating "not because

defendant's conduct is testimonial and if the police, by their request, force the defendant to choose between two potentially inculpatory alternatives, the defendant's refusal to comply with that request may not be introduced against him over objection without violating art. 12." *Commonwealth* v. *Conkey*, 430 Mass. 139, 143 (1999) (footnote omitted).

[5] The existence of compulsion due to the choice a motorist has whether to perform field sobriety tests is separate and apart from the issue of custody for purposes of the Miranda doctrine. The stop and brief detention of a motorist who is suspected of operating a motor vehicle while under the influence of alcohol is not custody and thus there is no need to advise such a person of his Miranda rights before police questioning. See *Commonwealth* v. *D'Agostino*, 38 Mass. App. Ct. 206, 208, *S.C.*, 421 Mass. 281 (1995). Such a person may be asked to perform field sobriety tests without first waiving his Miranda rights. See *Commonwealth* v. *Wholley*, 429 Mass. 1010, 1010-1011 (1999).

A field sobriety test does represent a seizure of the individual within the meaning of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. *Commonwealth* v. *Blais*, 428 Mass. at 297. So long as the officer has reasonable grounds to believe the suspect is under the influence of alcohol, such a warrantless seizure is authorized. See *id.* at 298. Because field sobriety tests involve the production of real or physical evidence, the suspect, in turn, has no right to refuse to perform such tests. *Id.* at 299-301 & n.3. However, the obligation to perform field sobriety tests does not imply that the police can force the suspect to comply. "Whether and what steps may be taken to compel compliance will depend on the circumstances. . . . The very nature of the tests involved here [field sobriety] makes the use of force to compel their performance obviously inappropriate." *Id.* at 301.

the tests [reveal the] defendant's thoughts, but because [the defendant's] body's responses [differ] from those of a sober person." *People* v. *Hager*, 69 N.Y.2d 141, 142 (1987). In *Vanhouton* v. *Commonwealth*, 424 Mass. 327, 332 n.9, cert. denied, 522 U.S. 834 (1997), the court explained that if, during "a roadside traffic stop for suspected drunk driving where the motorist is not in custody," he performs field sobriety tests such as reciting the alphabet, counting backwards, and reciting the date of a particular birthday, there is no violation of art. 12 because even if the suspect's responses are testimonial, they are not the product of governmental compulsion. See *Pennsylvania* v. *Muniz*, 496 U.S. 582, 585-586, 602-604 (1990) (defendant was in custody, but observations of his slurred speech and lack of muscular coordination during field sobriety tests were not testimonial).

Refusal evidence, however, stands on a different footing. As we have already noted, "[o]rdinarily, a prosecutor wants to admit evidence that the defendant refused to take a field sobriety test so that the jury may infer that it is the equivalent of his statement, 'I have had so much to drink that I know or at least suspect that I am unable to pass the test.' *Opinion of the Justices*, [412 Mass.] at 1209." *Commonwealth* v. *McGrail*, 419 Mass. 774, 778 (1995). "[T]he admissibility of such a refusal would place a defendant in a coercive 'Catch-22' situation: Take the test and 'furnish' incriminating real evidence against oneself, or refuse and produce adverse testimonial evidence of consciousness of guilt." *Commonwealth* v. *Lopes*, 459 Mass. at 170, quoting from *Opinion of the Justices*, *supra* at 1211. See *Commonwealth* v. *Conkey*, 430 Mass. 139, 142 (1999) ("evidence admitted to show consciousness of guilt is always testimonial because it tends to demonstrate that the defendant knew he was guilty"). "[I]f refusal evidence has relevance to any issue essential to the prosecution's case, it is because it is reflective of the knowledge, understanding, and thought process of the accused." *Opinion of the Justices*, *supra* at 1211. For this reason, evidence of the refusal to perform field sobriety tests when directed or requested by the police to do so violates the privilege against self-incrimination safeguarded by art. 12. *Ibid.*[6] Contrast

---

[6]See also *Commonwealth* v. *McGrail*, 419 Mass. at 776, 779-780 (defend-

*Commonwealth* v. *O'Laughlin*, 446 Mass. 188, 205-206 (2006) (evidence that the defendant initially consented to a police request to search his apartment and test a red stain on a closet door but later changed his mind and removed the stain was admissible because it was necessary to explain the loss of evidence and to put the defendant's destruction of the evidence in context).

We have previously held that once a person gives consent to take a test, his physical actions in performing the test are not testimonial and may be the subject of testimony at trial. See *Commonwealth* v. *Curley*, 78 Mass. App. Ct. 163, 168 (2010) (observations of the defendant's "attempts" to take the breathalyzer test not tantamount to evidence of his refusal to take the test). The basis for distinguishing between the defendant's refusal to take a test and volunteered statements made while attempting to perform the test does not turn on the distinction between testimonial and physical evidence (statements are clearly testimonial), but instead on the presence or absence of governmental compulsion. Once the defendant agrees to take the test and attempts it,[7] his expressions of difficulty or inability to perform or to complete it, such as "I can't do this," "I give

_____

ant's roadside statement that "[he was] not going to do any tests" was a protected refusal); *Commonwealth* v. *Grenier*, 45 Mass. App. Ct. 58, 60-62 (1998) (after the officer asked the defendant to perform the one-legged stand test, the defendant stated that he could not do the test; that the officer was trained to do the test; that if the defendant exercised his choice to do the test and failed, the officer would arrest him; and that if he declined to perform the test, the officer would arrest him. He then declined to perform the test; this was a protected refusal); *Commonwealth* v. *Ranieri*, 65 Mass. App. Ct. 366, 369, 371-373 (2006) (when asked by the police to recite the alphabet, the defendant's initial response was "No." When the officer asked him whether he did not know the alphabet or did not want to say it, the defendant began the recitation, paused at the letter "P," omitted "Q," "T," and "U," and finished. The officer described the speech as somewhat slurred. The defendant's initial "No" was a protected refusal). Contrast *Commonwealth* v. *Arruda*, 73 Mass. App. Ct. 901, 904 (2008) (defendant's refusal to consent to a blood test requested by medical professionals for medical purposes does not involve governmental compulsion and thus is not protected by the privilege against self-incrimination even where the defendant is in custody and police officers are present and have an interest in the results of the tests).

[7]A refusal to take the test is no less a protected refusal simply because the defendant initially agreed to take the test but then before attempting it declined to perform. See *Commonwealth* v. *Conkey*, 430 Mass. at 143.

up," or "I've had too much to drink," are not the products of compulsion and thus are admissible. See *Commonwealth* v. *Sands*, 424 Mass. 184, 189 (1997) ("Further, the defendant's claim that his voluntary admission violates art. 12 of the Massachusetts Declaration of Rights is without record support. There was no evidence that the defendant did not voluntarily furnish the communication that he was over the legal limit of intoxication, and there was no 'Catch-22' situation compelling him to furnish evidence. The defendant merely had to say, 'No' to withhold consent to taking the breathalyzer test, but instead, he blurted-out that he was intoxicated beyond the legal limit").

Even if the defendant agrees to perform field sobriety tests and attempts one or more of the tests administered by the officer, any subsequent refusal is similarly inadmissible as compelled testimony. See *Commonwealth* v. *Grenier*, 45 Mass. App. Ct. 58, 60-61 (1998). By contrast, in this case the defendant did not refuse to perform field sobriety tests; instead, he attempted unsuccessfully to do so. In such circumstances, the defendant's comment ("I can't do this"), while testimonial, was not the result of governmental compulsion and thus is admissible in evidence.

*Judgment affirmed.*