NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-657

COMMONWEALTH

vs.

KAREN M. PETERS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a bench trial in the District Court, the defendant was convicted of operating a motor vehicle while under the influence of alcohol, second offense, G. L. c. 90, § 24 (1) (a) (1).[1]  On appeal, she argues that her pretrial motion to suppress statements she made to police following the stop of her motor vehicle and the results of field sobriety tests,[2] which were administered by the arresting officer without

_____

[1] The defendant was found not responsible for two civil infractions, a marked lane violation and possession of an open container of alcohol in a motor vehicle, arising from the same incident.

[2] We recognize that field sobriety tests are sometimes referred to as roadside assessments.  Here, however, because the parties and the judge have described the tests as field sobriety tests, we do so as well.

first obtaining her express consent, was improperly denied.[3]  We

affirm.

Background.  The motion judge held a hearing on the

defendant's motion at which two Hull police officers, Officer

Joseph Delvecchio and Sergeant Stephen Glavin, testified.  At

the conclusion of the hearing, the judge issued oral findings of

fact and rulings of law as follows:

> "On July 19, [20]22, at approximately 7:00 P.M., the Hull
> Police received a report from a citizen regarding a car
> operating erratically, and it was described as a blue Lexus
> on its way from Hingham into Hull.
>
> "Officer Delvecchio, at this point a [rookie] officer for
> the Town of Hull, was in the area and soon thereafter saw
> the Lexus approaching his position.  He saw the car stop
> abruptly and almost hit a pedestrian.  He eventually[,]
> within a few minutes[,] pulled the car over after himself
> observing some erratic operation.
>
> "He saw that the defendant, Ms. Peters, was the operator.
> He noticed that her eyes were red and bloodshot.  He also
> smelled alcohol and noticed that her speech was very
> slurred.  He asked her if she had anything to drink, and
> she said oh, yes.  He asked her a few more times how much
> she had to drink, and she didn't directly respond.
> Instead, she said things like I live just down the road,
> and I'm staying with my boyfriend.
>
> "Two other officers appeared shortly thereafter, and then
> shortly thereafter that, four officers and Sergeant
> [Glavin], appeared.  She was asked to exit the car, and she
> did, although she had some trouble and was unsteady on her
> feet after she did exit.  The officer said that he was
> going to administer field sobriety tests.

---

[3] The defendant also moved to suppress the statements she
made to the police before and during the tests on the ground
that she was subjected to custodial interrogation without being
provided with Miranda warnings, but she does not pursue that
argument on appeal.

2

"She did not respond to the officer[']s statement that [s]he was going to take field sobriety tests. He did ask her how much education she had, and she responded that she was an attorney. He then described the alphabet test to her, and she did attempt and did imperfectly on the test and kept saying call my boyfriend.

"He then administered the nine step walk and turn, which he explained to her. She attempted to do that and performed poorly on that test. Finally, he asked her to do the one leg stand. She had flip-flops on, and she said she had [ten] screws in her knee, which might have contributed to the poor performance that was then seen by the officer.

"At no point did Ms. Peters tell any officer that she did not want to take the test. The officer did not explicitly ask her if she consented to taking the tests. I think due to her attempts to perform the tests, she impliedly consented to taking the tests.

"She was booked and somewhat unsteady and emotional at the time of the booking. She never said at that point that she didn't want or hadn't wanted to do any tests, and I will repeat that I do not find that some of the statements in the defendant's affidavit to be true, to [wit] that she was forced to exit her vehicle and was told that she had to submit to field sobriety tests.

"Also, I don't find it true that the police -- that she told the police please stop or that she told the police that she did not wish to perform any tests. Based on those findings of fact, the motion to suppress is denied, and I've made a written denial on the motion and indicated that the findings of fact may be made on the record."

Discussion. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [her] ultimate findings and conclusion of law.'" Commonwealth v. Costa, 448 Mass. 510, 514 (2007), quoting Commonwealth v. Scott, 440 Mass. 642, 646 (2004). The defendant argues that the motion

3

judge erred in denying her motion to suppress because she did not expressly consent to taking the field sobriety tests. She further claims that suppression of the evidence was warranted because she was not advised of her right to refuse to take the tests, she was compelled to submit to the tests, and her conduct before and during the tests was tantamount to a refusal to perform them.

It is important to note at the outset of our discussion that the defendant does not challenge the lawfulness of the motor vehicle stop or the exit order that preceded the administration of the field sobriety tests. Consequently, we understand the defendant to concede that she was lawfully detained and, to that extent, the strictures of the Fourth Amendment and art. 14 were satisfied. See Commonwealth v. Blais, 428 Mass. 294, 297 (1998).[4] Nonetheless, the defendant argues that all evidence related to her performance on the field sobriety tests, including her statements to the police, should have been suppressed because "the Commonwealth failed to meet its burden of proving that [her] consent to the performance of the field sobriety tests was voluntary."

---

[4] In response to questions from the panel at oral argument, appellate counsel agreed that the defendant was lawfully detained.

4

The flaw in this argument is that it ignores settled case law, which explicitly holds that a police officer is not required to obtain consent before administering field sobriety tests where, as here, the driver is lawfully detained based on reasonable suspicion of operating under the influence of alcohol. In Commonwealth v. Blais, 428 Mass. at 301-302, the Supreme Judicial Court explained,

> "[t]he [field sobriety] tests, although a search or a seizure, are reasonable incidents of a stop as well as of an arrest. It follows that there can be no right to refuse to perform those tests in the case of a lawful stop. If a person, lawfully arrested or detained, is ordered to perform the tests, the order does not violate any right of that person. Consent is not an issue in such cases."[5]

Because the defendant was lawfully detained, the court's analysis in Blais controls, and the Commonwealth had no burden to prove voluntary consent.[6] See id.

This is not to say that the officer could force or compel the defendant to take the field sobriety test. See Blais, 428

---

[5] Because consent is not an issue in the circumstances presented here and, more fundamentally, because there is no constitutional right to refuse to perform field sobriety tests, see Blais, 428 Mass. at 299-300 & n.3, the cases relied on by the defendant, which discuss the various factors to be considered in determining whether a person's relinquishment of a constitutional right is given freely and voluntarily, are not applicable.

[6] Although the defendant maintains that Officer Delvecchio should have advised her that she could refuse to perform the tests, she cites to no authority for her position and we have found none.

5

Mass. at 301.  The defendant argues that certain facts found by the motion judge supplemented with uncontested testimony from the hearing contradict the judge's conclusion that she "impliedly consented to taking the tests" and instead show that she was compelled to submit to Officer Delvecchio's order.  She points to the following facts in support of her argument:  1) she told Officer Delvecchio that she lived just a mile down the road with her boyfriend and during the encounter "kept saying call my boyfriend," 2) five or six police officers were present, thereby "outnumbering" her and creating an intimidating environment, 3) she initially did not respond when Officer Delvecchio informed her that he was going to administer field sobriety tests, 4) when instructed on how to perform the alphabet test, she replied, "I am an attorney," and 5) when instructed to perform the one-legged stand test, she said that she had ten screws in her knee.

Taken by themselves, these facts arguably fall short of supporting the judge's conclusion of implied consent.  But there was more.  The judge also found that the defendant "never said" that she "didn't want or hadn't wanted to do any tests."  The judge also specifically rejected the defendant's claims, set forth in her affidavit submitted in support of her motion to

6

suppress, to the effect that she was forced to perform the tests[7] stating,

> "I do not find that some of the statements in the defendant's affidavit to be true, to [wit] that she was forced to exit her vehicle and was told that she had to submit to field sobriety tests. Also, I don't find it true that the police -- that she told the police please stop or that she told the police that she did not wish to perform any tests."

In the absence of clear error, we are bound to accept these findings as well. And, in doing so, we reach the same conclusion as the motion judge, albeit independently, that the defendant was not forced to take the tests.

Lastly, the defendant contends the conduct on which she relies to support her claim that she was forced to perform the tests also shows that, in fact, she refused to take the tests. Therefore, she asserts, her motion to suppress should have been allowed based on the well-settled principle that if a person refuses to perform field sobriety tests, evidence of that refusal is not admissible in any subsequent criminal proceeding. See Commonwealth v. McGrail, 419 Mass. 774, 779 (1995), disapproved on other grounds, Blais, 428 Mass. at 299 n.3. The purpose of this rule is to safeguard an individual's privilege against self-incrimination as "refusal evidence is both

---

[7] The defendant averred that she "felt compelled to attempt [the tests]" and that she told the police she did not "wish to perform any tests."

7

compelled and furnishes evidence against oneself . . . [and] would violate the privilege against self-incrimination of art. 12 [of the Massachusetts Declaration of Rights]." Opinion of the Justices, 412 Mass. 1201, 1211 (1992).

Although we have no doubt that the defendant wanted the encounter to end, she did not refuse to take the tests. Neither reticence nor reluctance is the equivalent of refusal. In McGrail, for example, "[t]he defendant stated that '[he was] not going to do any tests.'" 419 Mass. at 776. In Commonwealth v. Ranieri, 65 Mass. App. Ct. 366, 370 n.1, 372-373 (2006), we concluded that refusal evidence was improperly admitted at trial where the defendant said "no" when asked to perform the alphabet test even though he subsequently attempted the test. In Commonwealth v. Grenier, 45 Mass. App. Ct. 58, 61 (1998), we held that the defendant's statement that "he could not do the one-legged stand test" was inadmissible refusal evidence.

Furthermore, while statements of refusal to perform field sobriety tests are inadmissible, "statements of a person's difficulty or inability to perform a field sobriety test . . . are not the product of compulsion within the meaning of art. 12 and thus are available for use against the individual at trial." Commonwealth v. Brown, 83 Mass. App. Ct. 772, 773 (2013). The statements at issue in this case are like those that were at issue in Brown. See id. There, upon being stopped by police on

suspicion of driving under the influence, the defendant said, "Can't you guys just let me go home?"  Id.  And later, after being asked to perform some field sobriety tests, the defendant said, "I can't do this" during a second attempt at performing the one-legged stand test.  Id. at 774.  The defendant in Brown characterized those statements as inadmissible refusal evidence. See id. at 773.  We rejected that claim and held the statements were not the product of compulsion within the meaning of art. 12, and thus were admissible at trial.  See id. at 778-779.

The same rationale applies here and leads us to the same conclusion we reached in Brown.[8]  See id.

**Judgment affirmed.**

By the Court (Vuono,
  Wolohojian[9] & Toone, JJ.[10]),

*Anne M. Thomas*

Assistant Clerk.

Entered:  May 9, 2024.

---

[8] Given our conclusion, we need not address the Commonwealth's alternative argument that, even if the results of the field sobriety tests should have been suppressed, the admission of that evidence at the defendant's trial was harmless beyond a reasonable doubt.  Briefly, the Commonwealth maintains that evidence of the defendant's intoxication, which included erratic operation, an admission to having consumed some wine and a drink made with vodka, slurred speech, blood-shot eyes, breath that smelled of alcohol, and unsteady balance, was overwhelming, and because the judge made clear she only considered the defendant's poor performance on the alphabet test and did not give any weight to the physical field sobriety tests when she rendered her verdict, the defendant is not entitled to reversal of her convictions.  We acknowledge that the Commonwealth's case was strong and, as the judge noted, there was no objection to the admission of the results of the tests in evidence.  We nonetheless need not conduct a harmless error analysis to affirm the defendant's conviction.

[9] Justice Wolohojian participated in the deliberation on this case while an Associate Justice of this court, prior to her appointment as an Associate Justice of the Supreme Judicial Court.

[10] The panelists are listed in order of seniority.